EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Management Administration Services, Corp. Demandantes-Recurridos  v.  Estado Libre Asociado de Puerto Rico etc. Demandados-Peticionarios | Certiorari  2000 TSPR 174 |
|---|---|

Número del Caso: CC-1999-0105

Fecha: 29/noviembre/2000

Tribunal de Circuito de Apelaciones:

Circuito Regional I

Juez Ponente:

Hon. Jeannette Ramos Buonomo

Abogados de la Parte Peticionaria:

Fiddler, González & Rodríguez, LLP
Lcdo. Charles Bimbela
Lcda. Clotilde Rexach

Abogados de la Parte Recurrida:

Bufete Pedro E. Ortiz Alvarez
Lcdo. Alex M. López Pérez

Materia: Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**Management Administration
Services, Corp.**

    **Recurrido**

        **vs.**                        **CC–1999–105**        **CERTIORARI**

**Estado Libre Asociado de
Puerto Rico, y otros**

    **Recurrente**

**OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**

    San Juan, Puerto Rico, a 29 de noviembre de 2000

        Los días 27 de julio y 16 de octubre de 1992, Management Administration Systems, Corp. (en adelante, M.A.S.) firmó sendos contratos con la Administración de Vivienda Pública obligándose a administrar varios residenciales públicos. El primero de los contratos, suscrito el 27 de julio de 1992, giraba en torno a la administración de 3,144 unidades de vivienda pública en el área de San Juan. El segundo de ellos, esto es, el del 16 de octubre, comprendía 2,618 unidades de vivienda en el área de Ponce. En total, M.A.S. administraba 5,762 unidades de vivienda pública, obligándose a mantenerlas en condiciones que cumplieran con las

exigencias de la reglamentación federal, codificada en 24 C.F.R. Sec. 882.109, referentes a los requisitos mínimos con que debe cumplir una unidad para ser habitable. Estos estándares son conocidos como Housing Quality Standard, en adelante, H.Q.S.[1] Referente a dichos requisitos, en los contratos se establecía específicamente que:

> "The management fee will not be paid for any unit in the contracted area not meeting Housing Quality Standards. This penalty shall be enforced 180 days after the Effective Date of this Contract." (Contrato, Artículo B-2 (H) (2).

Además, el Departamento de Vivienda y Desarrollo Urbano de los Estados Unidos (en adelante H.U.D.), le exigía a la Administración de Vivienda Pública, y ésta le exigía a M.A.S. como parte de su obligación contractual, que hiciera evaluaciones anuales,[2] producto de inspecciones igualmente periódicas de sus capacidades y deficiencias en el proceso de administración de las viviendas públicas. Entre los asuntos a considerarse en dichos informes se encuentra el cálculo del promedio de días que toma al administrador completar las órdenes de trabajo y observar si las unidades de vivienda administradas cumplen con los requisitos mínimos para ser habitables, según H.Q.S. En caso de que las unidades de vivienda no reúnan las condiciones de dicho estándar se requiere que se informe si se cumplió con el requisito de que las averías de emergencia se corrigieran en menos de 24 horas y en menos de 25 días las averías ordinarias. Además de estas evaluaciones anuales, M.A.S. tenía que realizar evaluaciones mensuales y notificarlas a la Administración de Vivienda Pública. Dichos informes evaluativos los preparaba el personal de M.A.S. En fin, se trataba de un proceso de autoevaluación.

Así las cosas, el 5 de agosto de 1994, la Administración de Vivienda Pública, por primera vez, le requirió a M.A.S. que le notificara el informe

---

[1] M.A.S. pagaría una tarifa (fee) por unidad administrada, que ascendía a una suma global de $160 mil mensuales. Esta suma era independiente del presupuesto que se asignaba a M.A.S. para cubrir los gastos operacionales y las reparaciones ordinarias o extraordinarias que sufrieran las unidades de vivienda.

de los resultados de la inspección anual a que hemos hecho referencia. Dicho informe debía contener la evaluación relativa al período comprendido entre julio de 1993 y junio de 1994. M.A.S. debía informar si las unidades de vivienda bajo su administración cumplían o no con H.Q.S., según surgiera de la requerida inspección anual.

El 26 de agosto de 1994, M.A.S. sometió las certificaciones solicitadas: la correspondiente a la región de Ponce, y la correspondiente a la región de San Juan. En dichas certificaciones M.A.S. consideró los H.Q.S. como exigencias de "condiciones óptimas", en lugar de "condiciones mínimas". La mencionada interpretación pudo haber tenido su origen en un memorando de 28 de julio de 1994, en el que el Administrador de la Administración de Vivienda Pública se refería a la deseabilidad de que las unidades de vivienda se mantuviesen en "condiciones óptimas". En consecuencia, de los informes sometidos, surgía que 1,275 unidades de vivienda no cumplían con los requisitos de calidad de vivienda (H.Q.S.) durante el año fiscal julio de 1993-junio de 1994. Luego, a raíz de los informes y mediante carta fechada el 14 de marzo de 1995, la Administración de Vivienda Pública notificó a M.A.S. que debía pagar una penalidad de $595,720, amparándose en el Art. B-2 y H-2 del contrato que les vinculaba. Le concedió hasta el 17 de marzo de 1995 para pagar, advirtiéndole que, de no hacerlo, le retendría el pago mensual por sus servicios. Ese mes sólo se le pagó alrededor de $10 mil.[3]

---

[2] Las mismas eran requeridas por la implementación del Public Housing Management Assesment Program, 24 C.F.R. Sec. 901 et seq. (en adelante, P.H.M.A.P.).

[3] Como hemos visto, el contrato entre las partes litigantes dispone para la imposición de penalidad a M.A.S., consistente en no pagarle los honorarios correspondientes a las unidades de vivienda que no cumplieran con H.Q.S. en atención al período de dicho incumplimiento. Tal como observara el tribunal de instancia, una unidad puede cumplir en un momento con H.Q.S., dejar de cumplir en otro momento y, rápidamente, estar en cumplimiento casi de inmediato.

Por ello, el período de incumplimiento puede ser sumamente breve. De hecho, la Administración de Vivienda Pública realiza evaluaciones periódicas en virtud del P.H.M.A.P.. Entre los factores observados en dichas evaluaciones se encuentra la capacidad demostrada por el administrador privado para corregir las deficiencias que notifican los residentes o que se descubren a través de inspecciones. M.A.S. obtuvo, en tales evaluaciones de la Administración de Vivienda Pública, las calificaciones

El 29 de marzo de 1995, M.A.S. radicó demanda ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el Estado Libre Asociado de Puerto Rico, la Administración de Vivienda Pública, y Miguel Rodríguez, en su capacidad personal y como Administrador de la Administración de Vivienda Pública. En la misma solicitó que se declarara que no adeudaba a la Administración de Vivienda Pública suma alguna en relación al vínculo contractual existente entre ellos; además, solicitó una determinación a los efectos de que la Administración de Vivienda Pública no tenía derecho a retenerle la tarifa mensual.

Ese mismo día, M.A.S. presentó una moción en solicitud de remedios provisionales con el fin de obligar a la Administración a pagarle las tarifas mensuales. M.A.S. ofreció prestar fianza. <u>El tribunal de instancia celebró varias vistas con el propósito de determinar la procedencia del remedio provisional solicitado por M.A.S., el cual otorgó</u>. El tribunal ordenó preliminarmente, el cumplimento específico de la obligación por parte de la Administración de Vivienda Pública y ordenó a M.A.S. que prestara fianza por la totalidad de la suma exigida por la Administración.

Posteriormente, el 29 de junio de 1995, la Administración de Vivienda Pública contestó la demanda y reconvino contra M.A.S., reclamando una cantidad en exceso de $500 mil por concepto de las tarifas de administración pagadas por las unidades que alegadamente no cumplían con H.Q.S.

El 29 de septiembre de 1995, M.A.S. radicó Moción de Sentencia Sumaria en la cual alegó que no existía entre las partes litigantes controversia sobre los siguientes hechos:

-que M.A.S. se equivocó al completar el formulario sobre requisitos de H.Q.S.; que se "confundió" y cumplimentó el mismo a base de estándares óptimos y que dicha confusión alegadamente era atribuible a la Administración de Vivienda Pública;
-que tal equivocación fue la única base en la que descansó la Administración de Vivienda Pública para imponer las penalidades a M.A.S.;
-que las unidades de vivienda administradas por M.A.S. cumplían con los requisitos de H.Q.S.;
-y que era improcedente la imposición de una penalidad en su contra.

---

más altas. La penalidad impuesta por la Administración de Vivienda Pública fue calculada considerando el supuesto incumplimiento como extensivo desde febrero de 1993 hasta julio de 1994.

La Administración de Vivienda Pública se opuso a dicha solicitud de sentencia sumaria. Luego de la ocurrencia de varios incidentes procesales, el tribunal de instancia dictó sentencia sumaria, declarando con lugar la demanda presentada por M.A.S. y sin lugar la reconvención. Concluyó que no existía fundamento legal alguno para imponer a M.A.S. la penalidad reclamada por la Administración de Vivienda Pública. De dicha sentencia se recurrió al Tribunal de Circuito de Apelaciones, el cual emitió sentencia confirmatoria de la dictada por el tribunal de instancia.

Concluyó el foro apelativo intermedio que el tribunal de instancia no cometió error al dictar sentencia sumaria a favor del demandante por no existir controversia de hechos que impidiese dictarla. Aplicó la doctrina de la "ley del caso", sosteniendo que las determinaciones de hechos de instancia estaban basadas en la adjudicación de credibilidad que realizó el tribunal de instancia a base de la prueba testifical y documental <u>que desfiló en las vistas llevadas a cabo con el fin de resolver la procedencia del remedio provisional solicitado</u>.

Luego de la denegatoria del foro apelativo intermedio de una moción de reconsideración, la Administración de Vivienda Pública, el Estado Libre Asociado de Puerto Rico, y el Administrador de la Administración de Vivienda Pública, recurrieron ante este Tribunal, argumentando que procede revocar dicha sentencia por el hecho de que el Tribunal de Circuito de Apelaciones erró:

-al permitir que el Tribunal de Instancia aplicara la doctrina de la "ley del caso" y basara las conclusiones de hechos de su sentencia sumaria en vistas celebradas con el exclusivo propósito de evaluar la solicitud de remedios provisionales por parte de la demandante, cuando la parte demandada no había tan siquiera hecho descubrimiento de prueba. Todo lo cual, colocó a la Administración de Vivienda Pública en un estado de indefensión, violando así su derecho a un debido proceso de ley al no permitirle su día en corte;

-al confirmar la sentencia sumaria, aún cuando había controversia sobre hechos esenciales, y aún cuando se abusó de discreción por ser éste un caso en donde está envuelto un alto interés público;

-al permitir que el Tribunal de Primera Instancia invirtiera el peso de la prueba;

-al permitir que el Tribunal de Instancia concluyera que las admisiones de M.A.S. y la evidencia de sus propias inspecciones no eran suficientes para imponer la penalidad.

Expedimos el auto y, contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

I

Es doctrina reiterada en nuestro sistema de Derecho que "[l]os derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso, ...". (Énfasis suplido.) In re: Tormos Blandino, 135 D.P.R. 573 (1994), citando a U.S.I. Properties Inc. v. Registrador, 124 D.P.R. 448 (1989). Dicho de otra manera, de ordinario los planteamientos que han sido objeto de adjudicación por el foro de instancia y/o por este Tribunal no pueden reexaminarse. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la "ley del caso". Vélez Miranda v. Servicios Legales de P.R., res. el 21 de enero de 1998, 98 TSPR 1, citando a Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 704 (1987).

Así como no puede invocarse la doctrina de cosa juzgada cuando no existe, como en este caso, una decisión final en los méritos que sirva de base a dicha defensa, Código Civil, Art. 1204, 31 LPRA sec. 3343; García v. Gobierno de la Capital, 72 D.P.R. 138, 150-151 (1951); Restatement, Judgments, secs. 41, 45 (1942); Developments in the Law--Res Judicata, 65 Harv. L. Rev. 818, 835 et seq. (1952), tampoco es aplicable en tales instancias la doctrina de la "ley del caso". Por otro lado, hemos resuelto que cuando a ley del caso es errónea y puede causar una gran injusticia, puede emplearse una norma de derecho diferente. Secretario del Trabajo v. Tribunal Superior, 95 D.P.R. 136, 140 (1967). Rivera Robles v. Insurance Co. of Puerto Rico, 103 D.P.R. 91 (1974).

En el Derecho Común, a falta de un estatuto, "la frase 'ley del caso', según se aplica al efecto que puedan tener las órdenes previas de un juez en las decisiones que luego toma dentro de un mismo pleito, expresa meramente la práctica general observada por los tribunales de negarse a reabrir lo que ya antes se ha decidido...". (Traducción nuestra.) Messenger v. Anderson, 225 U.S. 436, 444 (1912). Más que un mandato invariable o inflexible, la doctrina recoge una costumbre deseable: las controversias

sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales. De este modo, las partes en un litigio pueden, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras. Dictograph Products Company v. Sonotone Corporation, 230 F.2d 131 (2do Cir. 1956).

"En Puerto Rico[, como se sabe,] no existe fundamento válido para la aplicación al modo angloamericano de la ley del caso.... Rige aquí esta materia, por supuesto, el Código Civil." Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217, 222 (1975). Sin embargo, en cuanto a este aspecto la práctica sancionada por este Tribunal no varía de las normas que adopta cualquier sistema jurídico avanzado. "[A] fines de velar por el trámite ordenado y pronto de los litigios, así como por la estabilidad y certeza del derecho, un tribunal de instancia [como una cuestión de sana práctica y no como regla inviolable] deb[e] resistirse a alterar sus pronunciamientos dentro de un mismo caso excepto cuando se convenza de que los mismos son erróneos." Íd. Precisamente, porque este principio no es una regla inviolable, ni un límite al poder de los tribunales, en Torres Cruz v. Municipio de San Juan, *ante*, permitimos que un segundo juez revocara la decisión equivocada de un primer juez de igual nivel dentro de un mismo caso.

Así, reiteramos que la doctrina de la ley del caso es una "... al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados manifiestamente injustos." Noriega Rodríguez v. Hernández Colón, 130 D.P.R. 919 (1992), citando a Estado v. Ocean Park Dev. Corp., 79 D.P.R. 158, 174 (1956) y otros. En esa misma línea de pensamiento, también se ha reconocido "... que si el Tribunal entiende que la ley del caso antes establecida es errónea y que puede causar una grave injusticia, ... puede aplicar una norma de derecho diferente a fin de resolver en forma justa." Noriega Rodríguez v. Hernández Colón, *ante*, citando a Don Quijote Hotel v. Tribunal Superior, 100 D.P.R. 19, 29-30 (1971).

Es por esto que, en nuestra jurisdicción, un juez de instancia no queda atado por sus determinaciones interlocutorias, aun cuando éstas no hayan sido objeto de reconsideración o revisión.

En el caso que nos ocupa, la sentencia emitida por el Tribunal de Circuito de Apelaciones avala la utilización, con rango de "ley del caso", por parte del foro de instancia, de las determinaciones de hechos realizadas preliminarmente por dicho tribunal en resoluciones que giraban únicamente en torno a los méritos de la solicitud por parte de la demandante del remedio provisional de prestación de fianza. Es menester enfatizar que desde la primera de estas dos vistas el tribunal expresó su parecer sobre los hechos fundamentales del caso, expresiones que luego unió a la segunda resolución que emitiera. Sin embargo, tales expresiones no alcanzan el grado de dictámenes finales y firmes para fines de la doctrina de la "Ley del caso" en la substanciación en los méritos del caso de autos.[4] Luego, ha de tenerse en consideración que dicha primera vista se celebró pocos días después de presentarse la demanda del caso, antes de que los demandados contestaran la demanda, y sin tener, la parte demandada, una razonable oportunidad de realizar descubrimiento de prueba. Esto, sin duda, puede ser fuente de graves injusticias. Erró el Tribunal de Circuito de Apelaciones en su aplicación de la doctrina de la "ley del caso".

II

También señalan los recurrentes que erró el Tribunal de Circuito de Apelaciones al concluir que en el caso de autos procedía, conforme a derecho, dictar sentencia sumaria. Les asiste la razón.

En Hernández Villanueva v. Hernández, res. el 27 de enero de 2000, 2000 TSPR 14, reiteramos que la sentencia sumaria es un mecanismo procesal extraordinario que tiene el propósito de facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y, por tanto, no ameritan la celebración de un juicio en su fondo. Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624 (1994).

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que se podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en

---

[4] De hecho, en su primera resolución referente a los remedios provisionales, el Tribunal de Primera Instancia expresó que reconocía la probabilidad de que en alguna medida procediera

unión a las declaraciones juradas, si las hubiere, surge que no hay controversia real sustancial en cuanto a ningún hecho material, y como cuestión de derecho debe dictarse sentencia a favor de la parte promovente.

Sólo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Corp. Presiding Bishop v. Purcell, 117 D.P.R. 714 (1986). Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria. Metropolitana de Préstamos v. López de Victoria, res. el 1ro. de noviembre de 1996, 141 D.P.R.___(1996). La sentencia sumaria sólo debe concederse cuando no hay una genuina controversia sobre los hechos materiales y el tribunal se convence que tiene ante sí la verdad de todos los hechos pertinentes. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente. Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, res. el 15 de diciembre de 1997, 144 D.P.R.___(1997). La sentencia sumaria sólo debe dictarse en casos claros y cualquier duda en cuanto a si hay hechos pertinentes en controversia debe resolverse contra la parte que solicita la sentencia sumaria. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria. Véase, Piñero v. A.A.A., res. el 23 de octubre de 1998, 98 TSPR 140; Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, ante; Medina v. M.S. & D. Química de P.R. Inc., res. el 7 de abril de 1994, 135 D.P.R.___(1994); Rivera et al v. Superior Packaging, Inc., et al, 132 D.P.R. 115 (1992). García Díaz v. DAREX, res. el 20 de mayo de 1999, 99 TSPR 79. Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley." Roig Com.

---

la imposición de penalidad por parte de la Administración de Vivienda Pública contra M.A.S.

Bank v. Rosario Cirino, 126 D.P.R. 613, 617 (1990). Córdova Ramos v. Larín Herrera, res. el 2 de junio de 2000, 2000 TSPR 79.

Al dictar sentencia sumaria el tribunal: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. PFZ Properties v. General Accident, res. el 7 de septiembre de 1994, 136 D.P.R.____(1994).

## III

En el caso que nos ocupa, M.A.S. recurrió ante el foro judicial en solicitud de que se decretara que la Administración de Vivienda Pública actuó contrario a derecho al penalizarlo por alegadamente no haber mantenido en condiciones mínimas de habitabilidad durante dieciséis  meses, 1,275 unidades de vivienda que M.A.S. venía obligada a administrar conforme a lo pactado. Queda claro, entonces, que M.A.S. venía obligada a demostrar, por preponderancia de la prueba, que como cuestión de hecho las 1,275 unidades de vivienda cumplían con las condiciones mínimas de habitabilidad durante dicho período, contrario a sus propias declaraciones en el informe rendido ante la Administración de Vivienda Pública.[5]

Como cuestión de hecho, el tribunal de instancia no fue puesto en óptima posición para determinar si las 1,275 unidades de vivienda, sobre las cuales se trabó la controversia, cumplían con los estándares requeridos de habitabilidad. Entendemos que de los autos y de los documentos sometidos por la misma promovente de la moción de sentencia sumaria surge que existe

---

[5] Debe recordarse que M.A.S. le había informado a la Administración de Vivienda Pública que, según su autoevaluación, 1,275 unidades de vivienda que tenía bajo su administración no cumplían con los estándares requeridos contractualmente como condición necesaria para retribuirle mediante el pago de una suma de dinero. En vista de dicho informe, principalmente, la Administración de Vivienda Pública decidió que procedía cobrar la suma de dinero correspondiente al pago que ya había hecho por la administración de 1,275 unidades de vivienda de las comprendidas en la región de Ponce durante dieciséis meses.

controversia sobre la corrección o, mejor, la <u>veracidad</u> de los datos informados por M.A.S. a la Administración de Vivienda Pública, lo cual opera contra el proceder del tribunal de instancia de dictar sentencia sumaria y apunta a una conclusión de abuso de discreción al emitirla.

El tribunal de instancia, en su primera resolución concediendo los remedios provisionales, en cuyas determinaciones de hecho luego descansó para dictar la sentencia sumaria en controversia, concluyó que:

> "El formulario en que se basó la Administración de Vivienda Pública para imponer la penalidad, a la luz de la totalidad de la prueba, sólo puede significar, desde la perspectiva más conveniente a la Administración de Vivienda Pública, que en algún momento en el año esas unidades no cumplieron con requisitos H.Q.S. según lo interpretado por la Administración de Vivienda Pública. Aún así, si dicho incumplimiento no es imputable a M.A.S., no hay manera de aplicar irreflexivamente la cláusula de la penalidad. En el mejor de los casos, todo parece indicar que la penalidad sería una fracción de lo reclamado."

Evidentemente no se probó que M.A.S. mantuviera bajo los estándares H.Q.S. las 1,275 unidades de vivienda durante el período correspondiente a la penalidad. Tampoco se probó, si alguna fracción de dicha cantidad incumplió con las reglas federales, el tiempo en que lo estuvo, y por causa de quién. Tal vez M.A.S. no debía sufrir la imposición de la penalidad por la suma reclamada, tal vez sí, o por una suma menor. Para concluir cualquiera de tales extremos es necesario un despliegue de prueba de ambas partes en un juicio plenario. En cambio, lo que debió ser evidente para el tribunal de instancia, en el trámite de la petición de sentencia sumaria, fue el hecho de que del proceso no surge convincentemente que M.A.S. haya mantenido bajo los estándares H.Q.S. las 1,275 viviendas en controversia durante los dieciséis meses comprendidos en la penalidad. Erró el tribunal sentenciador al entender que la Administración de Vivienda Pública venía obligada a demostrar, por preponderancia de la prueba, que la imposición de la penalidad impugnada por MAS procedía. Tal fue el proceder del tribunal de primera instancia cuando expresó en su sentencia que:

> "La prueba que se presentó en oposición a la moción de sentencia sumaria descansa fundamentalmente en especulaciones y de ninguna forma prueba que durante dieciséis (16) meses un número considerable de las unidades administradas por M.A.S. no satisfacía los criterios de calidad conocidos como 'Housing Quality Standards' (H.Q.S.)."

Esto equivale a colocar el peso de la prueba sobre los hombros de la parte demandada sin que lo autorice o mande así ninguna presunción legalmente reconocida. Según la Regla 10 de evidencia:

> "El tribunal o juzgador de hechos deberá evaluar la evidencia presentada, a los fines de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los siguientes principios:
> (A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes.
> (B) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en la cuestión en controversia.
> [...]"

M.A.S. venía obligada a probar que su reclamo procedía en pleno derecho y, mediante la moción de sentencia sumaria tenía que evidenciar que no había hechos en controversia que obraran contra la conclusión de que las 1,275 unidades de vivienda sujetas a la penalidad cumplían con los estándares H.Q.S. durante el período de 16 meses por el cual se extendió la misma.

De hecho, en su petición de sentencia sumaria, M.A.S. alegó que no existía controversia sobre el hecho de que se equivocó al completar el formulario sobre los Housing Quality Standards (H.Q.S.) utilizando un estándar de "condiciones óptimas", cuando debió aplicar el de "condiciones mínimas". De ese modo pretendía erosionar el impacto de la admisión que hizo en dicho formulario. El tribunal de instancia acogió dicha alegación. Erró al así hacerlo. Dicho tribunal venía obligado a interpretar de la forma más favorable al promovido el contenido de los documentos presentados para sostener dicha sentencia sumaria. Entendemos que no cumplió con dicho mandato. Veamos.

En su solicitud de sentencia sumaria M.A.S. señaló, mediante declaración jurada de su Director de Mantenimiento, el Sr. Angel A. Caballero Bruno, que el mismo declarante fue quien preparó y envió la certificación de H.Q.S. a la Administración de Vivienda Pública; que preparó dicha certificación utilizando estándares óptimos de H.Q.S. y que esa es la razón por la que surgen incumplimientos con H.Q.S. cuando en efecto todas las unidades administradas por M.A.S. cumplían con dichos estándares.

Los demandados, por su parte, cuestionaron la veracidad de lo expuesto en dicha declaración jurada y acentuaron que la misma está reñida con la información contenida en otros anejos de la moción del demandante. Específicamente solicitaron al tribunal de instancia que hiciera referencia a los anejos 2 y 3 de la moción de sentencia sumaria de los demandantes. Estos documentos son memorandos internos de M.A.S. en los cuales el supervisor de mantenimiento y el supervisor de administración de dicha empresa le proveen al Sr. Caballero la información para que éste a su vez proceda a preparar la certificación requerida por la Administración de Vivienda Pública. Señalan dichos memorandos que "...por este medio certifico que la cantidad de viviendas de las siguientes comunidades cumple con los requisitos mínimos (H.Q.S.)". (Énfasis suplido.) Esta es la misma información que incorpora el Sr. Caballero en la certificación en la cual él alega estaba confundido. Resulta cuestionable, por ende, que el Sr. Caballero pretenda justificar el fracaso de M.A.S. en cumplir con el estándar de H.Q.S. alegando que creía que se pedía una evaluación de condiciones óptimas, y por tanto alegadamente un buen número de unidades de las administradas por M.A.S. no cualifican, cuando sus propios asesores le someten informes que reflejan que dicho incumplimiento ha sido tabulado a base de criterios mínimos de cumplimiento. Por otro lado, hay que añadir que M.A.S. fue certificada por el Housing and Urban Development (H.U.D.) para tramitar certificaciones de H.Q.S.. Luego, teniendo el peritaje para realizar las funciones que realizó, es dudoso que mediase la alegada confusión. Tales contradicciones, sin duda alguna, sustentaban la alegación de la Autoridad de Vivienda Pública de que existía controversia real y sustancial sobre un hecho material que imposibilitaba que se adjudicara sumariamente este hecho en particular. Por lo tanto, es forzoso concluir que tribunal de instancia abusó de su discreción y cometió error manifiesto al dictar sentencia por la vía sumaria en el caso de autos, decretando que no procedía la penalidad impuesta por la Administración de Vivienda Pública ni la reconvención presentada por ésta.

Procede, en consecuencia, la revocación de la Sentencia emitida por el Tribunal de Circuito de Apelaciones, y que se devuelva el caso al foro

de instancia para que proceda a ventilar la causa de acción por la vía ordinaria.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
**Juez Asociado**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**Management Administration
Services, Corp.**

    **Recurrido**

        **vs.**                                    **CC-1999-105          CERTIORARI**

**Estado Libre Asociado de
Puerto Rico, y otros**

    **Recurrente**

**SENTENCIA**

**San Juan, Puerto Rico, a 29 de noviembre de 2000**

     **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, devolviéndose el mismo al Tribunal de Primera Instancia, Sala Superior de San Juan, para que proceda a ventilar la causa de acción por la vía ordinaria.**

     **Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.**

                     **Isabel Llompart Zeno
                      Secretaria del Tribunal Supremo**