Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>JUAN FRANCISCO TORRES HUERTAS<br><br>Recurrido | TA2025CE00974 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: EVI2021G0030 y otros<br><br>Sobre: Asesinato en 1er grado (dos cargos), Tentativa de Asesinato en 1er grado, Conspiración, y Ley de Armas |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2026.

Comparece ante nosotros El Pueblo de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico (El Pueblo; peticionario) mediante el presente recurso de *Certiorari* y nos solicita que revisemos una determinación, emitida el 17 de diciembre de 2025 en corte abierta, notificada el 19 del mismo mes y año, por el Honorable Tribunal de Primera Instancia, Sala Superior de Caguas (TPI).[1]  Mediante esta, el TPI ordenó la eliminación de parte de las notas del agente Egea Guardarrama, relacionadas con la confesión de Juan Francisco Torres Huertas (señor Torres Huertas; recurrido), por razón de ser un perjuicio indebido para el jurado.  Adelantamos que, por los fundamentos que exponemos a continuación, se expide el auto de *certiorari* solicitado y se revoca la resolución recurrida.

**I**

Surge del recurso del peticionario, que en las vistas celebradas el 9 y 10 de julio de 2024, al amparo de la Regla 109 (c) de Evidencia,

---

[1] SUMAC, Entrada 2.

32 LPRA Ap. VI, R. 109 (c), **el TPI determinó en corte abierta que no iba a admitir en el juicio por jurado las notas del agente Egea Guardarrama sobre la confesión del señor Torres Huertas debido a que no hubo una renuncia consciente e inteligente a su derecho contra la autoincriminación**.[2]  Explicó que, el 23 de agosto de 2024, recurrió ante este Foro mediante un recurso de *Certiorari*, en el alfanumérico KLCE202400921, y que, el 16 de septiembre de 2024, un panel hermano emitió y notificó una resolución en la que denegó dicho recurso.  En su consecuencia, adujo que, el 19 de septiembre de 2024, presentó ante el Tribunal Supremo un recurso de *Certiorari*, junto con un Auxilio de Jurisdicción, mientras que el señor Torres Huertas presentó su oposición.  Expresó que, el 6 de agosto de 2025, nuestro Tribunal Supremo emitió una Opinión, en el caso *Pueblo v. Torres Huertas*, 216 DPR _ (2025), 2025 TSPR 79, **mediante la cual revocó la decisión recurrida y ordenó la admisión en evidencia de las declaraciones incriminatorias contenidas en las notas del agente Egea Guardarrama**.

Posteriormente, según surge de la *Minuta Resolución* de la vista celebrada el 17 de diciembre de 2025, **el señor Torres Huertas solicitó, al amparo de la Regla 403 de Evidencia, 32 LPRA Ap. VI, R. 403, la eliminación de una parte de las admisiones que constan en las notas del agente Egea Guardarrama, con fecha de 22 de enero de 2021, por razón de ser un perjuicio indebido**.[3]  Asimismo, solicitó que se celebrara una vista al amparo de la Regla 109 de Evidencia, *supra*, para que el TPI tomara una determinación a esos efectos.  Conviene mencionar que las admisiones objeto de la solicitud del señor Torres Huertas fueron atendidas por el Tribunal Supremo, mediante la Opinión emitida el 6 de agosto de 2025, en el caso *Pueblo v. Torres Huertas*, 216 DPR _ (2025), 2025 TSPR 79, en la cual resolvió que la confesión del señor Torres Huertas es admisible en evidencia.[4]  No obstante, **el TPI atendió la**

---

[2] SUMAC TA, Entrada 1.
[3] SUMAC, Entrada 2.
[4] Véase, *Pueblo v. Torres Huertas*, 2025 TSPR 79, a la pág. 12.

**solicitud del señor Torres Huertas en corte abierta y ordenó la eliminación de parte de las notas del agente Egea Guardarrama, relacionadas con la confesión**.   En particular, ordenó eliminar lo siguiente: "[m]e considero un peligro, me gusta matar gente, yo me la vivo" por razón de ser un perjuicio indebido para el jurado.[5]

Inconforme con el curso decisivo, el 30 de diciembre de 2025, El Pueblo presentó una *Petición de Certiorari* ante este Tribunal de Apelaciones, en la cual esgrimió la comisión del siguiente error:

> El Tribunal de Primera Instancia erró en derecho y abusó de su discreción al eliminar partes de las notas tomadas por el agente investigador, pese a que el Tribunal Supremo en *Pueblo v. Torres Huertas*, 216 DPR _ (2025), 2025 TSPR 79, ordenó "la admisión en evidencia de las declaraciones incriminatorias contenidas en las notas del agente".  Además, aun cuando la solicitud de exclusión se considera oportuna, parte del contenido eliminado es pertinente y no causa un perjuicio indebido al señor Torres Huertas.

Por otro lado, en cumplimiento con lo ordenado en la *Resolución* emitida el 23 de enero de 2026, el señor Torres Huertas compareció mediante un *Escrito en Cumplimiento de Orden*.

Con el beneficio de la comparecencia de ambas partes procederemos a exponer el derecho aplicable.

**II**

**A**

Todo ciudadano tiene un derecho estatutario a que un tribunal de superior jerarquía revise los dictámenes emitidos por los tribunales de jerarquía inferior.  *Hernández Jiménez et al. v. AEE et al.*, 194 DPR 378, 382 (2015); *García Morales v. Mercado Rosario*, 190 DPR 632, 638 (2014).  Así, pues, mediante el recurso discrecional del *certiorari* se viabiliza el derecho anteriormente subrayado.  *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Como corolario de lo antes expuesto, nuestro Tribunal Supremo ha manifestado que la parte afectada por alguna orden o resolución interlocutoria en un proceso

---

[5] SUMAC, Entrada 2, a la pág. 12.

criminal puede presentar un recurso de *certiorari*, a través del cual apele el dictamen interlocutorio del foro primario. *Pueblo v. Román Feliciano*, 181 DPR 679, 690 (2011).

Establecido lo anterior, precisa señalar que la Regla 40 del Reglamento del Tribunal de Apelaciones expone los criterios que este Tribunal deberá considerar para expedir un auto de *certiorari.* Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*In re Aprob. Enmdas. Reglamento TA*, *supra*, a las págs. 59-60.

Ahora bien, huelga acentuar que la discreción que tienen los foros apelativos para expedir un auto de *certiorari* no es irrestricta. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). En otras palabras, "los jueces, so pretexto de ejercer su discreción, no pueden olvidarse de, ni relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y los de las leyes, pertinentes a la cuestión en controversia". *Pueblo v. Rivera Montalvo*, *supra*, a la pág. 372, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 214 (1990). Así, pues, los criterios fijados por la antes señalada Regla 40, ayudan al tribunal revisor intermedio a ejercer prudentemente su discreción y decidir si atiende en los méritos el recurso. *Pueblo v. Rivera Montalvo, supra*, a la pág. 372. De otra parte, conviene tener presente que los tribunales apelativos solo pueden sustituir el criterio

del foro primario cuando existen circunstancias que prueben que actuó con pasión, perjuicio o parcialidad, incurrió en craso abuso de discreción o error manifiesto. *Id.*

**B**

La doctrina de cosa juzgada "persigue poner fin a los litigios luego de que los tribunales los adjudiquen de forma definitiva y, de este modo, garantizar la certidumbre y la seguridad de los derechos declarados mediante una resolución judicial". *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 655 (2013). Así, pues, se fomenta el interés del Estado de que se les ponga fin a los litigios. *P.R. Wire Prod. v. C. Crespo & Assoc.,* 175 DPR 139, 151 (2008). Además, se protege el interés de los ciudadanos de no litigar la misma causa en múltiples ocasiones. *Id.* Será necesario, para la aplicación de esta esta doctrina, que concurra la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. *Presidential v. Transcaribe*, 186 DPR 263, 274 (2012); *Fatach v. Triple S, Inc.*, 147 DPR 882, 889 (1999).

En lo que respecta al requisito de la identidad de cosas, este significa que existe un segundo pleito el cual versa sobre el mismo asunto adjudicado en el primer pleito, aunque en uno la cosa se abordase totalmente y en el otro solo parcialmente, o que haya sido disminuida o alterada. *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 220 (1992). Se sabe que los pleitos comparten identidad de cosas cuando el juzgador de instancia, al emitir una determinación, arriesga contradecir una decisión anterior. *Presidential v. Transcaribe*, *supra*, a las págs. 274-275.

Por otra parte, la identidad de causas existe cuando los hechos y los fundamentos de las peticiones son idénticos en lo que afecta a la cuestión planteada. De manera que, al determinar si existe identidad de causas de acción, debemos preguntarnos si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. *Id.* Finalmente, en cuanto a la identidad de personas, esta se suscita cuando las partes del segundo pleito comparecieron en el pleito anterior, o se encuentran unidos por vínculos de

solidaridad. *Presidential v. Transcaribe*, *supra*, a las págs. 275-276. Asimismo, la identidad de personas pueda darse porque existen entre las personas causahabientes en los pleitos una indivisibilidad en las prestaciones entre los que ostentan derecho a exigirlas u obligación de satisfacerlas. Al considerar lo que respecta a la identidad de las personas, se ha determinado que los efectos de la cosa juzgada se extienden a quienes intervienen en el proceso, a nombre y en interés propio. *Id.*

Establecido lo anterior, cabe resaltar que el impedimento colateral por sentencia es una modalidad de la defensa de cosa juzgada. *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 225 (2012). Ahora bien, esta doctrina se distingue de la cosa juzgada en que, para su aplicación, no es necesario que se configure el requisito de identidad de causas. *Presidential v. Transcaribe*, *supra*, a las págs. 276-277. En otras palabras "la razón para pedir una demanda no tiene que ser la misma que se presentó en la demanda anterior". *Id.* A esos efectos, esta doctrina podrá ser de aplicación "cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final y tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas". *Beníquez et al. v. Vargas et al.*, *supra*, a la pág. 225. No obstante, lo anterior, la aplicación de esta doctrina no procederá en casos en los cuales la parte promovente de la acción no tuvo oportunidad previa de litigar el asunto o no fue la parte perdidosa en el pleito anterior. *P.R. Wire Prod. v. C. Crespo & Assoc.*, *supra*, a la pág. 153.

Por último, huelga puntualizar que la doctrina de cosa juzgada no es inflexible y/o automática, esta puede ceder cuando, en su aplicación, esta derrote los fines de la justicia o las consideraciones del orden público. *Presidential v. Transcaribe, supra*, a la pág. 273.

**C**

En lo pertinente al caso de marras, es menester resaltar que el Tribunal Supremo ha expresado que, en nuestro ordenamiento jurídico, es

norma reiterada que los derechos y las obligaciones que han sido objeto de adjudicación en el ámbito judicial mediante un dictamen final y firme constituyen la ley del caso. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200 (2020); *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 8 (2016); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). Quiérase decir, para que adquiera carácter de ley del caso, la determinación tiene que constituir una decisión final en los méritos de la cuestión considerada y decidida. *Berkan et al. v. Mead Johnson Nutrition*, *supra*, a la pág. 201; *Cacho Pérez v. Hatton Gotay y otros*, *supra*, a la pág. 9; *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005).

La aludida doctrina aplica a las controversias adjudicadas, ya sea por los Tribunales de Primera Instancia como por tribunales apelativos. *Cacho Pérez v. Hatton Gotay y otros*, *supra*, a la pág. 9. Su propósito es que los tribunales se resistan a rexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedito de los litigios, así como promover la estabilidad y certeza del derecho. *Berkan et al. v. Mead Johnson Nutrition*, *supra*, 200-201; *Mgmt. Adm. Servs. Corp. v. E.L.A.*, *supra*, a la pág. 608; *Núñez Borges v. Pauneto Rivera*, 130 DPR 749, 755 (1992). Igualmente, esta doctrina es "una manifestación necesaria y conveniente del principio reconocido de que las adjudicaciones deben tener fin". *Cacho Pérez v. Hatton Gotay y otros*, *supra*, a la pág. 10. Ahora bien, la doctrina de la ley del caso no es inflexible, si el tribunal entiende que su determinación previa era errónea o puede causar una grave injusticia, podría, en exceptuadas ocasiones, aplicar una norma de derecho distinta. *Berkan et al. v. Mead Johnson Nutrition*, *supra,* a la pág. 201; *Cacho Pérez v. Hatton Gotay y otros*, *supra*, a la pág. 9.

**D**

El mandato es "una orden de un tribunal superior a uno de inferior jerarquía, notificándole haber revisado el caso en apelación y enviándole los términos de su sentencia". *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 300-301 (2012). Dispuesto de otra forma, el mandato es "el medio

oficial que posee un tribunal apelativo para comunicar a un tribunal inferior la disposición de la sentencia objeto de revisión y para ordenarle el cumplimiento de lo acordado." *Mejías et al. v. Carrasquillo et al.*, supra, 301; *Rosso Descartes v. BGF*, 187 DPR 184, 191-192 (2012); *Colón y otros v. Frito Lay*, 186 DPR 135 (2012); *Pueblo v. Tribunal de Distrito*, 97 DPR 241, 246 (1969). Su propósito principal es lograr que "el tribunal inferior actúe en forma consistente con los pronunciamientos del tribunal apelativo". *Id.* Una vez recibido el mandato, el tribunal inferior debe limitarse a dar cumplimiento a lo ordenado, que constituye la ley del caso entre las partes. *Pueblo v. Tribunal de Distrito*, *supra*; *Martínez v. Tribunal de Distrito*, 69 DPR 552, 555 (1949). El caso o cuestión que estaba ante la consideración de dicho foro finaliza para todos los efectos y el tribunal inferior readquiere la facultad de continuar con los procedimientos según dictaminado por el tribunal apelativo. *Id.*

Un tribunal de rango inferior no tiene discreción para ignorar ni alterar un mandato. Esta es la llamada "regla del mandato". *Pueblo v. Serrano Chang*, 201 DPR 643, 651 (2018), que cita a *Mejías et al. v. Carrasquillo et al.*, *supra*. El tribunal inferior no tiene autoridad para reabrir el caso, ni reconsiderar o enmendar la sentencia o suspender su ejecución. *Pueblo v. Tribunal de Distrito*, *supra*, a la pág. 247. Empero, si bien es cierto que el tribunal inferior le debe obediencia y fiel cumplimiento al mandato, el tribunal inferior retiene su discreción para atender asuntos que no fueron expresa o implícitamente adjudicados por el tribunal que emitió la orden de mandato. *Mejías et al. v. Carrasquillo et al.*, *supra*, a la pág. 302. No obstante, esto no constituye "un cheque en blanco para que los tribunales inferiores actúen fuera de la orden dictada". *Id.*

**III**

En el recurso ante nuestra consideración, El Pueblo nos plantea que el TPI incidió con su proceder al eliminar parte de las notas tomadas por el agente Egea Guardarrama, pese a que el Tribunal Supremo en *Pueblo v. Torres Huertas*, 216 DPR _ (2025), 2025 TSPR 79, ordenó "la admisión en

evidencia de las declaraciones incriminatorias contenidas en las notas del agente". Además, expresó que, aun cuando la solicitud de exclusión se considera oportuna, parte del contenido eliminado es pertinente y no causa un perjuicio indebido al señor Torres Huertas.

Según expusimos en nuestra exposición doctrinal previa, la doctrina de cosa juzgada protege el interés de los ciudadanos de no litigar la misma causa en múltiples ocasiones. *P.R. Wire Prod. v. C. Crespo & Assoc., supra*. Asimismo, es norma reiterada que la doctrina de la ley del caso aplica a las controversias adjudicadas, ya sea por los Tribunales de Primera Instancia como por tribunales apelativos. *Cacho Pérez v. Hatton Gotay y otros*, *supra*. Su propósito es que los tribunales se resistan a rexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedito de los litigios, así como promover la estabilidad y certeza del derecho. *Berkan et al. v. Mead Johnson Nutrition*, *supra*. Véase, además, *Mgmt. Adm. Servs. Corp. v. E.L.A.*, *supra*; *Núñez Borges v. Pauneto Rivera*, *supra*. Por otra parte, cabe destacar que, una vez recibido el mandato de un tribunal superior, el tribunal inferior debe limitarse a dar cumplimiento a lo ordenado, que constituye la ley del caso entre las partes. *Pueblo v. Tribunal de Distrito*, *supra*. Véase, además, *Martínez v. Tribunal de Distrito*, *supra*. Es decir, el tribunal de rango inferior no tiene discreción para ignorar ni alterar un mandato. *Pueblo v. Serrano Chang*, *supra*, que cita a *Mejías et al. v. Carrasquillo et al.*, *supra*. Asimismo, no tiene autoridad para reabrir el caso, ni reconsiderar o enmendar la sentencia o suspender su ejecución. *Pueblo v. Tribunal de Distrito*, *supra*, pág. 247.

Surge del expediente ante nuestra consideración que la parte que el señor Torres Huertas desea eliminar de las admisiones que constan en las notas del agente Egea Guardarrama, con fecha de 22 de enero de 2021, estuvieron ante la consideración del Tribunal Supremo mediante el caso *Pueblo v. Torres Huertas*, 2025 TSPR 79. En este, el Tribunal Supremo ordenó la admisión en evidencia de las declaraciones incriminatorias

contenidas en las notas antes mencionadas. Por tanto, colegimos que el petitorio de la parte recurrida en cuanto a la eliminación de parte de las notas tomadas por el agente Egea Guardarrama constituye cosa juzgada. Nótese que el recurso ante nos plantea los mismos señalamientos en lo relativo a la admisión en evidencia de las notas tomadas por el agente Egea Guardarrama, los cuales fueron atendidos y adjudicados. Es decir, en la Opinión, emitida el 6 de agosto de 2025 por el Tribunal Supremo, en el caso *Pueblo v. Torres Huertas*, 2025 TSPR 79, y el caso de epígrafe, concurren la más perfecta identidad entre las cosas, causas, y personas. Así pues, concluimos que dicha Opinión, impide que se litiguen en el pleito ante nos y entre las mismas partes, los asuntos ya adjudicados, los cuales advinieron finales y firmes.

Es por todo lo antes expuesto, que concluimos que el error esgrimido por la parte peticionaria se cometió, por lo que procede la revocación de la *Resolución* aquí recurrida.

**IV**

Por los fundamentos que anteceden, se expide el auto de *Certiorari* y se revoca la *Resolución* recurrida. En consecuencia, se devuelve el caso al foro de instancia para la continuación de los procedimientos, en armonía a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones