EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, en representación de la Corporación del Proyecto Enlace del Caño Martín Peña<br><br>Peticionarios<br><br>v.<br><br>Luis Ismael Carrión Marrero y otros<br><br>Recurridos | |
| Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, en representación de la Corporación del Proyecto Enlace del Caño Martín Peña<br><br>Peticionarios<br><br>v.<br><br>María Milagros Nieves Berríos y otros<br><br>Recurridos | 2022 TSPR 34<br><br>208 DPR \_\_\_\_ |

Número del Caso:  AC-2020-17
                  cons. con AC-2020-18


Fecha: 25 de marzo de 2022



**<u>AC-2020-17</u>**


Tribunal de Apelaciones:

     Panel VII


Abogados de la parte peticionaria:

     Lcdo. José I. Villamarzo
     Lcdo. Luis Rafael Rivera Rivera

**AC-2020-18**

Tribunal de Apelaciones:

    Panel VIII

Abogados de la parte peticionaria:

    Lcdo. José I. Villamarzo
    Lcdo. Luis Rafael Rivera Rivera

Materia:  Sentencia con Opinión de Conformidad y Opinión de Conformidad en parte y Disidente en parte.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, en representación de la Corporación del Proyecto Enlace del Caño Martín Peña<br><br>      Peticionarios<br><br>            v.<br><br>Luis Ismael Carrión Marrero y otros<br><br>      Recurridos | | |
| Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, en representación de la Corporación del Proyecto Enlace del Caño Martín Peña<br><br>      Peticionarios<br><br>            v.<br><br>María Milagros Nieves Berríos y otros<br><br>      Recurridos | AC-2020-0017 cons. con AC-2020-0018 | |

SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2022.

Debemos resolver si el Tribunal de Apelaciones erró al declararse sin jurisdicción para atender los recursos de revisión que presentó la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (AFI) en los casos de

epígrafe. Lo anterior, por entender que los recursos eran tardíos al presentarse fuera del término de 30 días que establece la Regla 52.2(b) de las Reglas de Procedimiento Civil, infra. Específicamente, debemos evaluar si el foro apelativo intermedio interpretó acertadamente que el asunto recurrido se basaba en una orden del Tribunal de Primera Instancia que era final y firme. Resolvemos que el Tribunal de Apelaciones erró en su interpretación y concluimos que los recursos se presentaron oportunamente.

## I

El 27 y 28 de junio de 2019 AFI, en representación de la Corporación del Proyecto ENLACE del Caño Martín Peña (ENLACE), presentó ante el Tribunal de Primera Instancia de San Juan varias peticiones de expropiación forzosa para adquirir el pleno dominio de determinadas propiedades que ocupan el canal del Caño Martín Peña. Entre ellas, las dos peticiones que originaron los casos de referencia las cuales están relacionadas a las propiedades identificadas como: (1) Estructura BVH-705 y (2) Parcela de terreno 1-6 ambas del término Municipal de San Juan. En sus peticiones AFI indicó que instaba los procedimientos de acuerdo con la Ley General de Expropiación Forzosa, 32 LPRA sec. 2901 et seq.; la Regla 58 de Procedimiento Civil, infra; la Ley para el Desarrollo Integral del Distrito de Planificación Especial del Caño Martín Peña, 23 LPRA sec. 5031 et seq.; así como con los Contratos de Servicio Núm. 2011-000053G y 2011-000053H que suscribió con ENLACE el 31 de mayo de 2011. Explicó que

consideraba útil, conveniente y necesaria la adquisición de los inmuebles para el uso y beneficio de ENLACE, de manera que esta pudiera llevar a cabo los fines y propósitos del Proyecto: Restauración del Ecosistema del Caño Martín Peña (dragado y canalización).

Junto con las peticiones, AFI presentó las declaraciones correspondientes para la adquisición y entrega material de la propiedad. En estas, solicitó la adquisición y entrega material de las propiedades a favor de ENLACE, su representada. No obstante, el 1 de julio de 2019, el Tribunal de Primera Instancia emitió órdenes similares en ambos casos en las que le exigió a AFI presentar un proyecto de investidura que excluyera el traspaso inmediato de los inmuebles al tercero, ENLACE.

Luego de varios trámites no pertinentes a la controversia que nos ocupa, el 10 de octubre de 2019, AFI presentó una *Moción en cumplimiento de orden* en ambos procesos. Argumentó que el Tribunal de Apelaciones dictó una Sentencia en otro caso en la que validó el traspaso de los bienes a nombre de ENLACE. Por consiguiente, adujo que el tribunal debía ordenar la entrega de los bienes objeto de las presentes acciones a favor de ENLACE según lo dispuesto por el foro superior.

El 15 de octubre de 2019 el foro primario dictó una Orden en cada caso en la que dispuso que carecía de jurisdicción para conceder esa solicitud, pues la determinación de 1 de julio de 2019 advino final y firme al no solicitarse reconsideración o revisión oportunamente. Inconforme, AFI

presentó en ambos casos una moción de reconsideración el 22 de octubre de 2019. Atendida esa moción de reconsideración, el Tribunal de Primera Instancia dictó Ordenes similares en cada caso el 23 de octubre de 2019 en las que dispuso lo siguiente:

> Advierta que la regla 58.3 de Procedimiento Civil, según enmendada, dispone que la orden para que proceda la inscripción registral del bien objeto de expropiación se hará a favor de la parte peticionaria, es decir su cliente AFI. El tribunal a los fines de adelantar el caso, estaría en la disposición de reconsiderar lo actuado únicamente ordenando que la resolución de investidura de título disponga la inscripción del sujeto a nombre de la peticionaria para uso y beneficio del Caño.

De esa determinación AFI recurrió al Tribunal de Apelaciones mediante sendos recursos de *certiorari* (KLCE201901551 y KLCE201901552). Sin embargo, el foro intermedio los desestimó por falta de jurisdicción. Ambos paneles que atendieron los recursos destacaron que el asunto recurrido estaba basado, esencialmente, en la orden final y firme que el Tribunal de Primera Instancia emitió el 1 de julio de 2019. Sostuvieron que AFI tenía 15 días a partir de esa fecha para solicitar reconsideración. Razonaron que las mociones en cumplimiento de orden que AFI presentó el 10 de octubre de 2019 ante el foro primario eran, en realidad, una solicitud de reconsideración tardía. Por ende, concluyeron que los recursos ante el foro intermedio eran tardíos igualmente.

Insatisfecho con esos dictámenes, AFI presentó ante este Foro dos recursos de apelación (AC-2020-17 y AC-2020-18). En

ambos, alega que el tribunal intermedio erró al declararse sin jurisdicción para atender la controversia sustantiva que se presentó; a saber, si AFI podía solicitar que se adjudicara la entrega material del bien expropiado a su representada, ENLACE. Sostiene que la orden que impugnó no era la de 1 de julio de 2019, sino la que el Tribunal de Primera Instancia emitió el 23 de octubre de 2019. Arguye que esta última es una versión sustancialmente modificada de la orden original.

Acogimos los recursos como *certiorari*, expedimos ambos y los consolidamos. Pasamos a resolver.

## II

En reiteradas ocasiones hemos expresado que un recurso prematuro o tardío adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre. Torres Martínez v. Ghigliotty, 175 DPR 83, 98 (2008). Esto es así porque en ambas instancias, al momento de la presentación, no existe la autoridad judicial o administrativa para acogerlo. Id. De manera que, cuando un tribunal determina que carece de jurisdicción para atender el asunto ante su consideración, procede desestimar el recurso, pues la falta de jurisdicción no es susceptible de ser subsanada por el tribunal ni por las partes. SLG Scendrey-Ramos v. F. Castillo, 169 DPR 873, 883 (2007).

La Regla 52.2(b) de Procedimiento Civil, 32 LPRA Ap. V, establece que los recursos de *certiorari* para revisar resoluciones u órdenes del Tribunal de Primera Instancia deben presentarse en el Tribunal de Apelaciones dentro del término

de 30 días desde la fecha de notificación de la resolución u orden. El mismo cuerpo reglamentario reconoce varias instancias en las que ese término se puede interrumpir. Entre ellas, cuando se presenta oportunamente una moción solicitando determinaciones de hechos y conclusiones de derecho adicionales o una moción de reconsideración. Reglas 43.2 y 47 de Procedimiento Civil, supra.

Incluso, este Tribunal interpretó que una segunda moción para solicitar determinaciones de hechos y conclusiones de derecho adicionales y una segunda moción de reconsideración pueden interrumpir el término para recurrir al Tribunal de Apelaciones si el dictamen impugnado fue alterado sustancialmente. Véase Colón Burgos v. Marrero Rodríguez, 201 DPR 330 (2018); Carattini v. Collazo Syst. Analysis, Inc., 158 DPR 345 (2003). En esas circunstancias el dictamen alterado se interpreta como una nueva determinación judicial. Id. Por ende, cuando el tribunal altera sustancialmente una determinación anterior, la parte afectada puede impugnar las alteraciones siempre y cuando su reclamo vaya dirigido a los nuevos pronunciamientos. Id.

Es importante señalar que, aunque los escenarios descritos requieren la acción de alguna de las partes -- por ejemplo, la presentación de una moción --, este Tribunal reconoció que un juez o jueza de instancia no está atado a sus determinaciones interlocutorias aun cuando éstas no hayan sido objeto de reconsideración o revisión. Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 608-609 (2000). Es decir, el

tribunal puede alterar un dictamen interlocutorio suyo *sua sponte*. Al respecto hemos analizado que aun cuando "los tribunales de instancia deben realizar el esfuerzo máximo posible para evitar la emisión de dictámenes contradictorios e inconsistentes – no existe, en principio, impedimento jurídico absoluto que priv[e] al tribunal […] de reconsiderar su dictamen interlocutorio original". Núñez Borges v. Pauneto Rivera, 130 DPR 749, 755 (1992).

### III

Debemos resolver si el Tribunal de Apelaciones erró al declararse sin jurisdicción para atender los recursos que AFI presentó. Según el foro intermedio, en ambos casos AFI impugnó un dictamen del Tribunal de Primera Instancia que era final y firme, a saber, la Orden de 1 de julio de 2019. De forma contraria, AFI alega que recurrió oportunamente al foro intermedio para revisar la Orden de 23 de octubre de 2019 la cual, a su juicio, es una versión sustancialmente modificada del dictamen original.

Según surge del expediente, una vez AFI presentó las peticiones y declaraciones de expropiación correspondientes, el 1 de julio de 2019 el Tribunal de Primera Instancia ordenó que se excluyera a ENLACE como la entidad a quien se le haría la entrega material del bien expropiado. Esa determinación fue interlocutoria toda vez que no dispuso de la totalidad del pleito. Por lo tanto, el foro primario tenía facultad para reconsiderar su decisión en un dictamen posterior, fuera *motu proprio* o a solicitud oportuna de alguna de las partes.

El foro intermedio enfocó su análisis en que la moción de reconsideración que AFI presentó el 10 de octubre de 2019 era improcedente. Sin embargo, ignoró que -- independientemente de que esta fuera tardía -- el 23 de octubre de 2019, el tribunal emitió una determinación **en la que varió sustancialmente su dictamen interlocutorio, particularmente en cuanto a la participación de ENLACE en el caso**. En otras palabras, el foro primario cambió su posición, por lo que AFI podía —como así hizo— solicitar reconsideración del nuevo dictamen.

En la determinación original de 1 de julio de 2019, el tribunal no reconoció a ENLACE como parte del pleito, es más, la identificó como un tercero. En cambio, en la orden de 23 de octubre de 2019, el tribunal reconoció que ENLACE podía tener participación en el proceso de expropiación. En específico, el foro primario indicó que con el propósito de adelantar el caso reconsideraría su decisión si la resolución de investidura de título disponía para la inscripción del bien a nombre de AFI para uso y beneficio de ENLACE. Por tanto, interpretamos que el foro primario asumió una nueva providencia judicial respecto a ENLACE distinta a la original. Tratándose de una nueva determinación, a partir de su notificación comenzó a transcurrir el término de 30 días que dispone la Regla 52.2(b) de Procedimiento Civil, supra, para recurrir al Tribunal de Apelaciones.

La orden recurrida en el caso AC-2020-17 se notificó el mismo día que se dictó, el 23 de octubre de 2019. Mientras

que la orden recurrida en el recurso AC-2020-18 se notificó dos días después, el 25 de octubre de 2019. Las peticiones de *certiorari* para revisar esas órdenes se presentaron en el Tribunal de Apelaciones el 22 de noviembre de 2019 dentro del término de 30 días. Por lo tanto, resolvemos que el foro intermedio erró al declararse sin jurisdicción.

## IV

Por los fundamentos que anteceden, se revocan las Sentencias recurridas del Tribunal de Apelaciones y se devuelve el caso a ese foro para que continúe con los procedimientos conforme con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite una Opinión de Conformidad. El Juez Asociado señor Colón Pérez emite una Opinión de Conformidad en parte y Disidente en parte a la cual se une el Juez Asociado señor Estrella Martínez. La Jueza Asociada señora Pabón Charneco concurre. El Juez Asociado señor Kolthoff Caraballo no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, en representación de la Corporación del Proyecto Enlace del Caño Martín Peña<br><br>Peticionarios<br><br>v.<br><br>Luis Ismael Carrión Marrero y otros<br><br>Recurridos<br><br>Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, en representación de la Corporación del Proyecto Enlace del Caño Martín Peña<br><br>Peticionarios<br><br>v.<br><br>María Milagros Nieves Berríos y otros<br><br>Recurridos | AC-2020-0017<br>cons. con<br>AC-2020-0018 |

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de Conformidad.

En San Juan, Puerto Rico, a 25 de marzo de 2022.

Me expreso de forma independiente porque entiendo que la determinación mayoritaria se queda corta al no resolver la controversia sustantiva que se plantea en estos casos. El reclamo de AFI ante esta Curia se debió atender en su totalidad. El interés público, la agilidad de los procesos y

la importancia social de la que están revestidos estos casos, estimo que lo ameritaban.[1]

En el 2004 la Asamblea Legislativa aprobó la Ley Núm. 489 de 24 de septiembre de 2004, 23 LPRA sec. 5031 et seq.,[2] para viabilizar un proyecto de restauración ambiental del Caño Martín Peña. Este proyecto, denominado Proyecto ENLACE del Caño Martín Peña tiene como objetivos: (1) propiciar la rehabilitación del Estuario de la Bahía de San Juan mediante el ensanche y dragado del Caño; (2) mejorar la calidad de vida de los cerca de 30,000 residentes de al menos ocho comunidades aledañas al Caño, y (3) propiciar el desarrollo cívico y democrático a través de la participación de los residentes en el proceso de planificación y rehabilitación del área. Art. 3 de la Ley Núm. 489-2004, infra.

Para cumplir con esa política pública se creó la Corporación del Proyecto ENLACE del Caño Martín Peña (ENLACE). Esta entidad, entre otras cosas, asumió la importante tarea de adquirir los terrenos que conforman gran parte del manglar -- muchos de los cuales fueron ocupados de forma espontánea por sus residentes -- para comenzar con el dragado y la canalización del Caño según previstos por el proyecto. Por

---

[1] La máxima "justicia lenta no es justicia" es principio fundamental para una sana administración judicial. El mismo se desprende de varios estatutos que gobiernan cómo se administra la justicia en Puerto Rico, por ejemplo, la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 LPRA sec. 24 et seq. y la Regla 1 de Procedimiento Civil, 32 LPRA Ap. V. Cónsono con lo anterior, atender en los méritos este caso evitaría la dilación que frustra el propósito cardinal que lo inspira. Véase Pueblo v. Pérez Cruz, 103 DPR 44, 46 (1974).

[2] También conocida como la Ley para el Desarrollo Integral del Distrito de Planificación Especial del Caño Martín Peña.

consiguiente, ENLACE compró varios terrenos de los residentes que accedieron a venderlos voluntariamente por la vía contractual. Sin embargo, ENLACE se ha visto obligada a recurrir en última instancia al procedimiento de expropiación forzosa para adquirir el resto de los terrenos de las personas que no los han cedido.

La ley habilitadora de ENLACE no le confiere expresamente a la entidad la autoridad para iniciar un procedimiento de expropiación. Por ello, y con el propósito de cumplir el fin público para el que fue creada, ENLACE solicitó el auxilio de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (AFI) para iniciar el procedimiento de expropiación y adquirir el pleno dominio de los terrenos restantes.

La controversia que se suscitó en la Sala de Expropiaciones es si AFI, una entidad con facultad legal para iniciar el proceso de expropiación, puede solicitar que el bien expropiado se adjudique directamente a ENLACE, su representada. El asunto llegó al Tribunal de Apelaciones mediante varios recursos de revisión. En muchos de ellos, el foro intermedio resolvió correctamente que los bienes expropiados se deben adjudicar a ENLACE. Sin embargo, en los dos casos ante nuestra consideración el tribunal apelativo intermedio se declaró sin jurisdicción para atender los recursos incoados. Por lo tanto, de entrada, nos correspondía resolver si el Tribunal de Apelaciones tenía jurisdicción para

revisar las determinaciones recurridas del foro primario. Según analizó la mayoría en la Sentencia que emitió hoy, los recursos de revisión se presentaron ante el foro intermedio oportunamente. Por ello, estoy conforme.

Ahora bien, la segunda controversia que se nos planteó -- y que estimo debimos atender -- es si AFI, una entidad con facultad legal para iniciar el proceso de expropiación, puede solicitar que el bien expropiado se adjudique directamente a ENLACE, su representada. Por los fundamentos que expondré más adelante, opino que sí.

**I**

La sentencia que emite este Tribunal recoge adecuadamente los hechos que sirvieron de base para los recursos ante nuestra consideración. Por ende, los acojo en su totalidad.

Ahora bien, estimo pertinente añadir que, además de sus señalamientos procesales, en los recursos ante nos AFI argumentó que la decisión de los foros recurridos de no permitir que ENLACE adquiera por expropiación forzosa plantea un estado de incertidumbre jurídica, toda vez que en otros procedimientos de expropiación forzosa que AFI inició en representación de ENLACE para expropiar terrenos del área del Caño Martín Peña con el mismo fin, se le reconoció tal facultad a la corporación. Puntualiza, que lo anterior implica que, para efectos de titularidad, algunos terrenos se adjudicarán a ENLACE, pero otros -- como los que son objeto de estos casos -- no. Ante este cuadro, nos solicitó que uniformemos

el estado de derecho aplicable a la titularidad de estos bienes que AFI expropió en representación de ENLACE. Este Tribunal no atendió este señalamiento en la sentencia, por lo que, estimo meritorio expandir.

**II**

**A. *La expropiación forzosa***

El Estado tiene poder inherente para adquirir bienes privados mediante el procedimiento de expropiación forzosa. Adm. de Terrenos v. Ponce Bayland Enterprices, Inc., 2021 TSPR 91, 207 DPR ___ (2021); Mun. de Guaynabo v. Adquisición, 180 DPR 206, 216 (2010); ACT v. 780.6141M2, 165 DPR 121, 130 (2005). Esa facultad es un atributo de su poder soberano y, por ende, es de superior jerarquía a todos los derechos de propiedad. Id. Sin embargo, no es un poder irrestricto.

Nuestra Constitución dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1. Esta disposición constitucional limita el poder de expropiación del Estado al exigirle que (1) el bien expropiado se destine a un fin público, (2) se pague una justa compensación por el bien, y (3) se cumplan las disposiciones legales que regulan el procedimiento de expropiación al adquirir bienes privados. Id.; Adm. de Terrenos v. Ponce Bayland Enterprices, Inc., supra. El procedimiento de expropiación forzosa en nuestra jurisdicción es de naturaleza

civil y se lleva a cabo conforme a la Ley de Expropiación Forzosa, 32 LPRA sec. 2901 et seq. y la Regla 58 de Procedimiento Civil, 32 LPRA Ap. V.

Los estatutos regentes establecen que el procedimiento de expropiación será *in rem*. Id. Esto significa que no va dirigido contra una persona o demandado particular, sino que la acción se dirige contra la propiedad. Adm. de Terrenos v. Ponce Bayland Enterprices, Inc., supra; Pueblo v. McCormick, Alcaide & Co., 78 DPR 939, 945 (1956). Ahora bien, aunque el procedimiento es de naturaleza *in rem*, se requiere que el Estado mencione en la demanda o acumule como demandados a las personas que puedan tener algún interés sobre la propiedad. 32 LPRA sec. 2905; Regla 58.3(b) de Procedimiento Civil, supra; Adm. de Terrenos v. Ponce Bayland Enterprices, Inc., supra; Municipio de Guaynabo v. Adquisición, supra. Lo anterior, a los fines de que estas puedan reclamar cualquier derecho que tengan a la compensación que se fije o a los daños que el procedimiento ocasione. 32 LPRA sec. 2905. Además, hemos reconocido que el titular del dominio tendrá derecho a formular defensas y objeciones que tenga tanto sobre el fin público al que se destinará la propiedad como a la cuantía declarada como justa compensación. Municipio de Guaynabo v. Adquisición, supra; ACT v. 780.6141M2, supra.

La Ley de Expropiación Forzosa establece que el procedimiento comenzará con la presentación de una demanda en la Sala correspondiente del Tribunal de Primera Instancia de San Juan. 32 LPRA sec. 2095. Las personas que pueden iniciar

la acción son: (1) el Estado Libre Asociado de Puerto Rico; o (2) el funcionario, persona, agencia, autoridad, instrumentalidad o cualquier otra entidad u organismo autorizado por ley para expropiar. Id. De ordinario, junto a la petición se radica un legajo de expropiación que contiene una declaración para la adquisición y entrega material del objeto de expropiación. Adm. de Terrenos v. Ponce Bayland Enterprices, Inc., supra; Amador Roberts v. ELA, 19 DPR 268, 278 (2014). Esa declaración, en la que se detallan los pormenores de la entrega del bien expropiado, debe estar firmada por la persona o entidad autorizada en ley para expropiar. 32 LPRA sec. 2907. Lo anterior implica que la entidad gubernamental que interese adquirir bienes mediante el mecanismo de expropiación forzosa debe tener la facultad en ley para adquirir por ese medio.

De ordinario, esa facultad se confiere de manera expresa. Sin embargo, en P.R. Railway, Light & Power Co. v. Ortiz, 59 DPR 921, 930 (1942) reconocimos que "[e]l derecho a ejercitar el poder de dominio inminente deberá ser conferido por el estatuto, bien en términos expresos o por necesaria implicación; y las leyes que lo confieran deberán ser estrictamente interpretadas" (citando 29 C.J.S., Eminent Domain, sección 22). Al respecto, encontramos que 29A C.J.S., Eminent Domain, sección 23 enuncia lo siguiente:

> While the right to exercise the power of eminent domain may properly be conferred by a general act, unless a statute clearly delegates the right, the right is not conferred. The power should not be gathered from doubtful inferences, or from vague or

ambiguous language, and every reasonable doubt should be resolved adversely to the existence of the right.

Nevertheless, while there is authority for the view that an express and positive legislative enactment is required to authorize the exercise of the power, and that such right does not pass by implication, it has also been held that the right need not be expressly conferred if it appears by clear, necessary, or reasonable implication.

Whether a statute confers the right to exercise the power of eminent domain by implication depends on the intention of the legislature which should be ascertained primarily from the language used, although resort may also be had to a consideration of the statute in relation to its subject matter. The right may be implied if its existence is reasonably necessary to [a]ffect the purpose of the condemning authority.

Por su parte, la Lcda. Cynthia Torres Torres analiza lo

siguiente:

Existen entidades cuya ley habilitadora no las faculta para adquirir bienes mediante expropiación forzosa. Sin embargo, en muchas de ellas la enumeración de aquellas formas mediante las que sí puede adquirir bienes no es exhaustiva. En esos casos vemos que la ley habilitadora enfoca más el propósito de la adquisición que el modo de llevarla a cabo. Pero si el propósito de la adquisición de determinada propiedad es de utilidad pública o **si por medio de dicha adquisición la entidad expropiante puede cumplir con el fin público de su creación, es razonable interpretar que por "necesaria implicación", la misma también está autorizada para adquirir bienes a través de la expropiación forzosa.**[3] (Negrillas suplidas).

Según expone la autora, existen entidades gubernamentales que

el legislador crea con un fin público inequívoco y preciso a

las cuales les otorga amplia facultad para adquirir bienes.

Ello, con el objetivo de que puedan cumplir el fin público

---

[3] Torres Torres, La expropiación forzosa en Puerto Rico, pág. 29 (First Book Publishing 2003).

para el que fueron creadas. Por consiguiente, es razonable interpretar que, en esas circunstancias particulares, las entidades gubernamentales en cuestión tienen autoridad para ejercer el pleno dominio sobre una propiedad expropiada como parte de la amplia facultad que le fue delegada para adquirir bienes. Esta autoridad la requieren por implicación necesaria del fin público que cumplen.

Ahora bien, Torres Torres advierte que existen entidades que, si bien tienen autoridad en ley para adquirir bienes mediante expropiación forzosa, no tienen facultad para iniciar el procedimiento ante el tribunal. En cuanto a esta distinción, explica lo siguiente:

> La Asamblea Legislativa es el cuerpo político que a través de las leyes que promulga, instrumenta y delega el poder de expropiación. La misma ha creado entidades que le sirven al Estado a las cuales les autorizó para expropiar y/o para iniciar la acción judicial de expropiación forzosa. Muchas entidades del gobierno a las que desde su origen la ley orgánica que las habilitó no les facultó expresamente para iniciar la acción judicial de expropiación, se han ido capacitando para incoar esos procedimientos.
>
> […]
>
> Si en definitiva la entidad en cuestión tuviera facultad para expropiar, pero no para iniciar el procedimiento, la misma podrá requerirle a otra entidad con facultad para representar al Estado Libre Asociado de Puerto Rico que lo inicie a su nombre y para su beneficio.[4]

Este análisis de la autora encuentra apoyo en la Sección 5(a) de la Ley de Expropiación Forzosa, supra. En lo pertinente,

---

[4] Cynthia Torres Torres, págs. 30-33.

esta sección establece lo siguiente:

> En cualquier procedimiento entablado o que se entable por y a nombre bajo la autoridad del Estado Libre Asociado de Puerto Rico o Gobierno Estatal, **bien actúe en tales procedimientos el Estado Libre Asociado de Puerto Rico o Gobierno Estatal por propia iniciativa y para su propio uso o bien a requerimiento de cualquier agencia o instrumentalidad del Estado Libre Asociado de Puerto Rico;** y en todo procedimiento entablado o que se entable por y a nombre de la Autoridad de Hogares de Puerto Rico, de cualquier Autoridad Municipal de Hogares, de cualquier municipio de Puerto Rico para la expropiación o adquisición de cualquier propiedad para uso público, el peticionario o demandante podrá radicar dentro de la misma causa, al tiempo de radicar la demanda o en cualquier momento antes de recaer sentencia, una declaración para la adquisición y entrega material de la propiedad objeto de expropiación, **firmada dicha declaración por la persona o entidad autorizada por ley para la expropiación correspondiente, declarando que se pretende adquirir dicha propiedad <u>para uso</u> del Estado Libre Asociado de Puerto Rico o Gobierno Estatal, o de la agencia o instrumentalidad gubernativa que la hubiere requerido, o de cualquier otro peticionario o demandante.**(Negrillas y subrayado suplido).

Nótese que la ley contempla instancias en las que una entidad gubernamental autorizada en ley para expropiar inicia el procedimiento a requerimiento de otra, en nombre y para beneficio esta última con el propósito de transmitirle la titularidad procurada.

A base de lo anterior, podemos reconocer que en los procedimientos de expropiación forzosa deben concurrir dos facultades. La primera es la facultad para iniciar el procedimiento de expropiación forzosa. Esa autoridad debe surgir expresamente de una disposición legal. La segunda es la facultad para adquirir mediante expropiación forzosa. Esta

última debe surgir de forma expresa o por implicación necesaria del fin público que cumple la entidad. Por lo tanto, puede recaer en la entidad que presente la demanda de expropiación o en cualquier otra entidad que tenga la facultad para expropiar en beneficio de la cual se expropia el bien. Lo importante al determinar si cierta entidad tiene autoridad para adquirir mediante expropiación o para iniciar el proceso es analizar las leyes en virtud de las cuales se establecen sus propósitos, poderes y facultades.

### B. *ENLACE*

Según surge de la Exposición de Motivos de la Ley Núm. 489-2004, el Caño Martín Peña y los terrenos anegados relacionados al mismo fueron por varios años el lugar de residencia de cerca de 30,000 personas que a mediados del siglo 20 se desplazaron del área rural al área metropolitana en busca de mejores condiciones de vida. Las comunidades que surgieron en esos terrenos juegan un papel importante en la ciudad capital. Son fuentes significativas de mano de obra para los sectores de construcción, de empleo para pequeños comercios locales y de servicios para la ciudad. Asimismo, aportan de manera significativa al quehacer social y cultural del país.[5]

Sin embargo, los ingresos de las familias que residen en esa área se encuentran bajo los niveles de pobreza en mayor

---

[5] Esto se refleja, no solo en la comunidad, sino también en la literatura puertorriqueña donde podemos identificar referencias al Caño Martín Peña. Ejemplo de ello es el cuento de José Luis González, *En el fondo del caño hay un negrito*.

proporción que otros residentes del archipiélago. Además, el proceso de urbanización espontáneo que se dio en estos terrenos tuvo repercusiones negativas sobre el medio ambiente, lo que a su vez impactó negativamente la calidad de vida de las personas que residen allí. La siguiente representación de ese proceso resulta apropiada.

> La ocupación espontánea de esos terrenos que conformaban parte importante del sistema de manglar se hizo principalmente mediante el depósito de relleno constituido por escombros y residuos sólidos sobre los cuales se construyeron miles de estructuras. Este proceso de urbanización no planificada del sector ha tenido como consecuencia la degradación ambiental del Caño Martín Peña y del Estuario de la Bahía de San Juan, ocasionando la reducción del canal y aumentando el riesgo a inundaciones. Debido al impacto sobre algunas porciones del terreno que anteriormente ocupaba el manglar, se considera técnicamente irreversible propiciar la recuperación a su estado natural. Exposición de Motivos de la Ley Núm. 489-2004.

En aras de reubicar a estas comunidades a un lugar más seguro para proveerles mejor calidad de vida, la Asamblea Legislativa promulgó la Ley Núm. 489-2004. En virtud de esta, creó la Corporación del Proyecto ENLACE del Caño Martín Peña como parte de los Proyectos Estratégicos prioritarios a desarrollarse por el Gobierno de Puerto Rico para la rehabilitación del Caño y de las comunidades aledañas.

El fin público que este estatuto persigue -- y que se le encomendó a ENLACE -- incluye, entre otras cosas, proteger a las comunidades del Caño las cuales constituyen una pieza vital en el tejido cultural, económico y social de San Juan. Ese fin se consigue creando condiciones para integrar a las

personas a la vida urbana de la ciudad y atendiendo aspectos de salubridad pública, vivienda, ordenamiento y calidad de la infraestructura. Art. 3 de la Ley 489-2004. De forma que, a su vez, se rehabilite y revitalice el área del Caño para tener en óptimas condiciones ambientales el Estuario de la Bahía de San Juan. Id.

Aunque el cumplimiento de la política pública enunciada en la ley implica atender diversos aspectos de esa transición, la controversia que nos ocupa nos lleva a enfocarnos en un aspecto: los títulos de propiedad de los residentes del Caño. A esos efectos, de la Exposición de Motivos de la ley surge la intención legislativa de clarificar y resolver de forma definitiva y firme la situación legal de la concesión de títulos de propiedad a varios residentes que ocuparon terrenos rellenados en el Caño. Exposición de Motivos de la Ley Núm. 489-2004. Durante varias décadas el Gobierno de Puerto Rico y el Gobierno Municipal de San Juan han llevado a cabo diferentes procesos para conceder y reconocer varios títulos de propiedad en ese lugar. Id. Sin embargo, en esas ocasiones no han logrado completar todos los requisitos de ley para su reconocimiento e inscripción formal mediante escritura en el Registro de la Propiedad. Por ello, algunos residentes mantienen incertidumbre sobre la validez de sus títulos. Id.

Para cumplir adecuadamente con la política pública consagrada en la ley, la Asamblea Legislativa le confirió a ENLACE todos los derechos, poderes y prerrogativas dispuestos

por ley. Art. 6 de la Ley Núm. 489-2004, 23 LPRA sec. 5035. Entre ellas: celebrar actos, acuerdos y contratos de todas clases; **adquirir y enajenar propiedad a cualquier título; gestionar y obtener de las agencias públicas la ayuda técnica y económica que estime necesaria, de cualquier naturaleza, para cumplir con las funciones de la corporación**; y realizar todos los actos o cosas necesarias o convenientes para llevar a cabo los poderes conferidos a la corporación por ley. Id. Apoyada en estos poderes, ENLACE solicitó el auxilio de AFI para tramitar los procedimientos de expropiación de los inmuebles que impiden el dragado y canalización del Caño.

## III

Luego de resolver que el Tribunal de Apelaciones erró al declararse sin jurisdicción para atender los recursos de revisión ante su consideración, debimos atender la segunda controversia que se nos presentó, a saber: si AFI puede solicitar la entrega del bien expropiado a su representada, ENLACE. Para contestar, debíamos analizar dos asuntos: (1) si ENLACE puede adquirir bienes mediante un proceso de expropiación forzosa, y (2) si AFI puede instar un proceso de expropiación a nombre de ENLACE. La contestación de ambas es en la afirmativa.

AFI narra en su recurso ante nos que, para cumplir con el proyecto de restauración del Caño, ENLACE logró la aprobación de una suma millonaria de fondos federales. Alega que, para no perder esos fondos, la entidad tiene que cumplir

prontamente con la adquisición de terrenos y estructuras, así como con el realojo de miles de familias. Nos informa que, si bien en un principio la adquisición de los terrenos y estructuras en áreas de impacto del Proyecto se intentó lograr por la vía contractual, ello no ha sido posible en su totalidad. Por tanto, como última medida, ENLACE ha recurrido a la vía de expropiación forzosa para obtener la titularidad de los terrenos y comenzar con el dragado y la canalización de Caño.

La Ley Núm. 489-2004 no le confiere expresamente a ENLACE la facultad para adquirir mediante el procedimiento de expropiación forzosa. No obstante, como vimos, esa autoridad puede surgir por implicación necesaria del fin público para el que fue creada determinada entidad. Por lo anterior, nos corresponde analizar las razones para las que la Asamblea Legislativa creó la corporación ENLACE a los fines de determinar si adquirir mediante expropiación forzosa es una facultad necesaria para llevar a cabo ese fin público.

Según surge de la Ley Núm. 489-2004, la restauración del Caño Martín Peña es un proyecto público muy importante para el cual tanto el gobierno como distintas organizaciones no gubernamentales han trabajado durante décadas. El estado ambiental actual del Caño impacta significativamente no solo las comunidades aledañas, sino a la población en general. El dragado y la canalización del canal permitirán restituir el flujo de agua y reconectar la Laguna San José con la Bahía de San Juan. Esa es la gran encomienda que la Ley Núm. 489-2004

le delegó a ENLACE. De hecho, la entidad se creó exclusivamente para ejecutar esa política pública.

El desarrollo del proyecto requiere reubicar un número sustancial de familias que viven actualmente en los terrenos rellenados del canal que anteriormente pertenecían al mangle. Son precisamente esos terrenos los que ENLACE necesita adquirir. Sin su adquisición está impedida de realizar la fase de dragado.

Según surge de los poderes delegados por su ley habilitadora, ENLACE puede adquirir propiedad a cualquier título.[6] Si bien la Asamblea Legislativa no dispuso expresamente que esa entidad puede adquirir por expropiación forzosa, no limitó ni estableció una lista taxativa de las maneras en que esa entidad podría adquirir propiedades. La expropiación forzosa es indiscutiblemente una forma de llevar a cabo esa adquisición puesto que, sin expropiar los terrenos afectados, ENLACE estaría impedida de cumplir el fin público de restauración y canalización del Caño Martín Peña.

Ahora bien, aun tras concluir que ENLACE puede adquirir por necesaria implicación del propósito público para el que

---

[6] Recordemos que el título "es un negocio jurídico obligacional que sirve de base para la transferencia de un derecho real". L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 2da ed., Madrid, Ed. Tecnos, 1981, Vol. III, pág. 77; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1971, T. III, Vol. 1, pág. 340. Los negocios jurídicos son a su vez actos jurídicos que tienen "por fin directo establecer, modificar o extinguir relaciones jurídicas". Art. 268 del Código Civil de Puerto Rico, 31 LPRA sec. 6121. Asimismo, un acto jurídico comprende un hecho jurídico tiene lugar por la actuación de una persona, que puede ser el Estado, y "que producen la adquisición, la modificación o la extinción de derechos". Id. sec. 6111. En consecuencia, la Asamblea Legislativa, al permitir que ENLACE adquiera por cualquier título, la autorizó implícitamente a adquirir, entre otros, por expropiación forzosa.

fue creada, subsiste el impedimento de que esa entidad no tiene facultad en ley para iniciar el procedimiento de expropiación forzosa en el tribunal. Esto es así, pues carece de una delegación expresa a esos efectos. Por lo anterior, ENLACE necesita que una entidad independiente, con facultad expresa para expropiar, inicie el procedimiento en su nombre. Se torna relevante en esta situación la facultad de ENLACE para gestionar y obtener de las agencias públicas la ayuda técnica **o de cualquier naturaleza** que estime necesaria para cumplir los fines de la corporación.

AFI es una instrumentalidad del Estado Libre Asociado que se creó, entre otras razones, con el objetivo de proveer una alternativa para el financiamiento de las necesidades de la infraestructura de Puerto Rico. Ley Núm. 44 de 21 de junio de 1988, según enmendada, 3 LPRA sec. 1901, 1903. Así pues, cualquier ente autorizado por ley para proveer facilidades de infraestructura, como ENLACE, puede recibir asistencia de la AFI mediante contratos a tales efectos. Id., sec. 1904. Conforme a los poderes que se le delegaron, AFI puede demandar y ser demandada bajo su nombre y adquirir bienes de cualquier forma, incluyendo mediante expropiación forzosa. Id., sec. 1906. En este caso, el rol de AFI es suplir la capacidad de ENLACE para presentar en el foro judicial la petición de expropiación actuando en representación y en beneficio de la entidad.

No podemos olvidar que ENLACE es parte de los procesos

de expropiación junto con AFI. Además, es la entidad gubernamental que desembolsa los fondos para pagar la justa compensación de las expropiaciones.

Por los fundamentos anteriores debimos resolver que el foro primario erró al disponer que los bienes expropiados se pueden adjudicar únicamente a AFI para uso y beneficio de ENLACE. Atender este asunto era de vital importancia si consideramos la magnitud del Proyecto de Restauración del Caño Martín Peña. La encomienda delegada a ENLACE requiere ejecutar el proyecto dentro de determinados plazos para beneficiarse de fondos federales imprescindibles. Además, amerita que se trabaje con premura y celeridad dado que se trata de un esfuerzo conjunto del que participan no solo diversas entidades, sino personas que residen en las comunidades aledañas al Caño. Estas últimas, quienes se ven personalmente afectadas por las condiciones ambientales actuales de esa área, merecían que esta Curia facilitara el proyecto en lo que era de su competencia. En fin, opino que el alto interés público y social que presentaba este caso justificaba y requería que atendiéramos la controversia sustantiva que planteó AFI en su recurso. Después de todo, la justicia tardía es una sombra de la injusticia.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, en representación de la Corporación del Proyecto Enlace del Caño Martín Peña<br><br>Peticionarios<br><br>v.<br><br>Luis Ismael Carrión Marrero y otros<br>Recurridos | AC-2020-0017<br>cons. con<br>AC-2020-0018 | *Certiorari* |
| Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, en representación de la Corporación del Proyecto Enlace del Caño Martín Peña<br><br>Peticionarios<br><br>v.<br><br>María Milagros Nieves Berríos y otros<br>Recurridos | | |

Opinión de Conformidad en parte y Disidente en parte emitida por el Juez Asociado señor COLÓN PÉREZ, a la cual se une el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 25 de marzo de 2022.

> "En realidad, no es que tengamos poco tiempo, sino que perdemos mucho".[1]

En esta ocasión, este Tribunal tenía la oportunidad de atender dos (2) controversias medulares para la completa disposición -- en derecho y en justicia -- de los recursos ante nuestra consideración, a saber: 1) si en los presentes casos el Tribunal de Apelaciones tenía jurisdicción para atender las peticiones de la Autoridad para el

---

[1] L.A. Séneca, *De la brevedad de la vida*, 4ta ed., San Juan, Editorial UPR, Reimpresión 2005, pág. 28.

Financiamiento de la Infraestructura de Puerto Rico y, 2) si los bienes expropiados forzosamente en los casos de epígrafe podían ser adjudicados a favor de la Corporación del Proyecto ENLACE del Caño Martín Peña.

Lo anterior, pues, somos del criterio que la manera en que el foro apelativo intermedio dispuso de los asuntos ante nos, sin duda alguna, continúa teniendo el grave efecto de detener un esfuerzo social-ambiental trascendental y de alto interés público, el cual -- como veremos -- repercute en el día a día de miles de ciudadanos y ciudadanas residentes de los márgenes del sistema de lagunas y canales que componen el Estuario de la Bahía de San Juan, particularmente, del Caño Martín Peña.

Ahora bien, debido a que esta Curia, a pesar de haber atendido correctamente la primera controversia, ha omitido considerar la segunda de ellas -- **negándole así a la Corporación del Proyecto ENLACE del Caño Martín Peña un remedio oportuno, completo y apropiado** --, procedemos a exponer nuestra posición sobre el particular mediante la presente *Opinión de Conformidad en parte y Disidente en parte*. Veamos.

### I.

Los hechos medulares que dan margen al presente litigio se recogen con particular precisión en la *Sentencia* que hoy emite este Foro, razón por la cual hemos decidido adoptar los mismos por referencia. En esencia, el 27 y 28 de junio

de 2019 la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (en adelante, "AFI"), en representación de la Corporación del Proyecto ENLACE del Caño Martín Peña (en adelante, "ENLACE"), presentó ante el Tribunal de Primera Instancia ciertas peticiones de expropiación forzosa como parte del plan de "Restauración del Ecosistema del Caño Martín Peña (Dragado y Canalización)".

Las referidas peticiones fueron acompañadas de declaraciones de adquisición e inscripción donde se solicitó que el pleno dominio -- al igual que la posesión material de los inmuebles -- le fuera investido, mediante la correspondiente inscripción registral, a la corporación ENLACE. Sin embargo, dichas solicitudes fueron denegadas por el foro primario, quien le ordenó a la AFI, respectivamente, presentar un proyecto de resolución de investidura sin la inclusión de la petición de entrega e inscripción de los bienes en cuestión a favor de ENLACE.

En desacuerdo con lo ordenado por el Tribunal de Primera Instancia, el 10 de octubre de 2019 la AFI presentó mociones en cumplimiento de orden. En éstas, esbozó los argumentos que militaban a favor de que el foro primario reconsiderara su postura y procediera a autorizar que el pleno dominio y la posesión material de las propiedades expropiadas le fueran investidas a ENLACE. En esencia, la AFI adujo que el Tribunal de Primera Instancia debía ordenar la entrega de

los bienes inmuebles aquí en controversia a la corporación de referencia, toda vez que el Tribunal de Apelaciones así lo había resuelto en controversias análogas.

Evaluados los planteamientos de la AFI, el 15 de octubre de 2019 el foro primario dictó unas subsiguientes órdenes, donde indicó que no tenía jurisdicción para atender las peticiones antes mencionadas, ya que su determinación había advenido final y firme. En consecuencia, sostuvo que se debía cumplir con sus anteriores mandatos.

Insatisfecha con lo resuelto por el Tribunal de Primera Instancia, el 22 de octubre de 2019 la AFI presentó las correspondientes mociones de reconsideración. **En respuesta, el 23 de octubre de 2019 -- y en lo que a todas luces supone un nuevo dictamen -- el foro primario determinó que de conformidad con la Regla 58.3 de Procedimiento Civil, *infra*, la orden para la inscripción registral del bien objeto de expropiación se hace a favor de la parte peticionaria, es decir, la AFI. No obstante, señaló que "a los fines de adelantar el caso, estaría en disposición de reconsiderar lo actuado".** Apéndice de los recursos de apelación, pág. 26. Sobre el particular, expresó estar inclinado a ordenar que la resolución de investidura dispusiera la inscripción del sujeto a nombre de la AFI, pero para uso y beneficio de ENLACE.

Inconforme con lo determinado por el Tribunal de Primera Instancia, la AFI acudió ante el foro apelativo

intermedio mediante recursos de *certiorari* separados. En éstos, señaló que el foro primario había errado al negarse a efectuar la entrega directa e inscripción de los bienes inmuebles objeto de expropiación a favor de ENLACE, sin considerar las determinaciones previas del Tribunal de Apelaciones sobre el mismo asunto. Esto, ya que en ocasiones anteriores el foro apelativo intermedio había autorizado la entrega e inscripción a favor de ENLACE.

Tras evaluar los recursos de referencia, dos (2) paneles del Tribunal de Apelaciones concluyeron que procedía la desestimación de los recursos por carecer de jurisdicción. Es menester señalar que los otros recursos -- siete (7) en total, y los cuales comparten iguales orígenes a los dos (2) recursos ante nuestra consideración, fueron consolidados y atendidos por un Panel distinto del foro apelativo intermedio -- resultaron en la entrega directa de los bienes expropiados forzosamente a ENLACE.[2] Es decir, dicho Panel se declaró con jurisdicción y resolvió la controversia en sus méritos. Ello, contrario al resultado al que arribó el Tribunal de Apelaciones en los casos de marras -- es decir, que carece de jurisdicción -- lo que, consecuentemente, crea una realidad extrajudicial incierta donde determinadas propiedades expropiadas forzosamente

---

[2] Véase, KLCE201901546; KLCE201901547; KLCE201901548; KLCE201901549; KLCE201901550; KLCE201901553; KLCE201901554.

quedarían inscritas a favor de ENLACE y las dos (2) de epígrafe no.

En desacuerdo con lo sentenciado por el foro apelativo intermedio, el 14 de febrero de 2020 la AFI acudió ante nos. En síntesis, arguye que el Tribunal de Apelaciones erró al estimar que carecía de jurisdicción para atender los recursos ante su consideración. Por otro lado, sostiene que dicho foro incidió al no consolidar los presentes casos con los otros siete (7) recursos que estaban ante su consideración. Finalmente, señala que el foro apelativo intermedio erró al no resolver la controversia sustantiva planteada, a saber, si procede o no la entrega directa de los bienes expropiados forzosamente a favor de ENLACE, así como la correspondiente inscripción.

Trabadas así las controversias, y con el beneficio de la comparecencia de todas las partes con interés en el presente litigio, este Tribunal en el día de hoy correctamente resuelve que el foro apelativo intermedio erró al denegar por falta de jurisdicción el recurso de *certiorari* instado por la AFI. Sin embargo, -- como ya adelantamos -- desatiende la controversia sustantiva planteada, entiéndase, disponer que los bienes expropiados forzosamente deben ser adjudicados a favor de ENLACE, tal y como otros Paneles de ese foro resolvieron. Subrayamos nuestra disidencia con esto último. Nos explicamos.

II.

Como es sabido, el Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico consagra como derecho fundamental el disfrute de la propiedad. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. No obstante, y como excepción a lo anterior, nuestra Carta Magna dispone determinado proceso de privación de la propiedad mediante los mecanismos de expropiación forzosa.

Así pues, "[l]a expropiación forzosa es concebida en nuestro ordenamiento jurídico como el poder soberano que reside en el Estado para adquirir el dominio de una propiedad sita dentro de sus límites territoriales". *Administración de Terrenos de Puerto Rico v. Corporación Pesquera Henares, Inc.*, 201 DPR 14, 21 (2018). Véase, también, C. Torres Torres, *La expropiación forzosa en Puerto Rico: ley, jurisprudencia, estudio y guía práctica*, First Book Publishing of P.R., 2002, págs. 1-4. En ese sentido, la facultad de expropiación del Estado es un "atributo inherente a su soberanía, superior a todos los derechos de propiedad". *ELA v. Registrador*, 111 DPR 117, 119 (1981); Torres Torres, *op. cit.*, pág. 1.

Ahora bien, en reiteradas ocasiones, hemos sentenciado que dicho poder no es irrestricto, y al momento de ejercitar el mismo, se buscan evitar -- a toda costa -- las acciones abusivas o arbitrarias del Estado. *Municipio de Guaynabo v. Adquisición*, 180 DPR 206, 229 (2010); Torres Torres, *op.*

*cit.*, pág. 4. Conforme a este objetivo, la Constitución del Estado Libre Asociado de Puerto Rico establece que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1.[3]

Cónsono con ello, se ha establecido que todo ejercicio del poder de expropiación forzosa conlleva el cumplimiento con las disposiciones de la *Ley General de Expropiación Forzosa* de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.* (en adelante, "Ley General de Expropiación Forzosa"). De igual forma, son de aplicación los postulados de la Regla 58 de Procedimiento Civil, 32 LPRA Ap. V, R. 58.

Así pues, y de conformidad con la normativa antes expuesta, para que una propiedad sea expropiada forzosamente, en primer lugar -- y generalmente -- debe hacerse una declaración de utilidad pública. Véase, 32 LPRA sec. 2902. Una vez cumplido dicho requisito, y siempre que la entidad gubernamental esté autorizada para ello, se podrá instar la correspondiente acción judicial de expropiación. Véase, 32 LPRA sec. 2905.

**Dicho ello, y en lo relativo a la acción judicial de expropiación, conviene señalar que la Ley General de**

---

[3] De forma similar, y de acuerdo con la precitada disposición constitucional, el Art. 282 del Código Civil de 1931, 31 LPRA ant. sec. 1113, establecía que ninguna persona puede ser privada de su propiedad, salvo por una autoridad competente, por motivo de utilidad pública o beneficio social y mediando una justa compensación.

**Expropiación Forzosa permite que una entidad inste dicha acción en representación y, como consecuencia, a beneficio de la otra.** Véase, 32 LPRA sec. 2907. Inclusive, expone que una vez se radique la declaración de adquisición y entrega, junto al correspondiente depósito en el tribunal, el título absoluto de dominio de dicha propiedad "quedará investido en el Estado Libre Asociado de Puerto Rico o Gobierno Estatal, o en la agencia o instrumentalidad del Estado Libre Asociado de Puerto Rico que hubiere requerido la expropiación, o en el de la entidad demandante o peticionaria que no fuere el Estado Libre Asociado de Puerto Rico". *Íd.*

Sobre el particular, es menester recalcar que la capacidad para expropiar no es análoga a la capacidad para iniciar una acción judicial de expropiación forzosa. A esos efectos, se ha señalado que:

> Existe una distinción entre la autoridad legal para expropiar, entiéndase, adquirir bienes por expropiación y la autoridad legal para iniciar el trámite judicial de expropiación forzosa. Esta distinción se basa en que debido a que el poder para expropiar reside en el Estado y para representarlo en estos casos hay que estar expresamente facultado, entonces, el hecho de que a una entidad se le haya conferido la facultad para expropiar no significa que también podrá iniciar el trámite judicial y comparecer en representación del Estado. Se trata de distintas facultades. Torres Torres, *op. cit.*, pág. 30.

**Por tanto, las entidades que están facultadas para expropiar -- pero no para iniciar el correspondiente proceso judicial --, pueden solicitarle a otra entidad con facultad**

**para representar al Estado Libre Asociado que insten la correspondiente acción -- como mencionáramos -- "<u>a su nombre y para su beneficio</u>**". (Énfasis suplido). Torres Torres, *op. cit.*, pág. 33.

### III.

Establecido lo anterior, y en aras de contextualizar la urgencia de las controversias ante nuestra consideración, debemos recordar que el Caño Martín Peña es un canal ubicado en el Municipio de San Juan, con gran cercanía a la Milla de Oro. Dicho cuerpo de agua, a su vez, forma parte del Estatuario de la Bahía de San Juan, el cual mezcla el agua dulce que fluye de los ríos con la salada del océano, lagunas, bahías y canales. En las orillas de esos cuerpos de agua, a principios del siglo XX -- particularmente durante las décadas del treinta al cincuenta -- se asentaron trabajadores, trabajadoras y familias del campo que se aventuraron hacia la ciudad. M. Hernández Torrales, *El Fideicomiso de la Tierra del Caño Martín Peña: Corolario de un modelo de participación comunitaria en marcha*, 68 Rev. Col. Abog. PR 794, 796 (2007).

Este desplazamiento geográfico, fijado en la apuesta de mejorar las condiciones de vida, resultó en un acelerado crecimiento y densidad población localizada en el área metropolitana del País.[4] Véase, H. Icken Safa, *Familias del*

---

[4] Para más información sobre la historia de las ocho (8) comunidades aledañas al Caño Martín Peña y la comunidad Cantera, véase, *Historia de nuestras comunidades*, G8, http://g8pr.org/quienes-somos/la-empresa/ (última visita, 14 de marzo de 2022).

*arrabal: un estudio sobre desarrollo y desigualdad*, San Juan, Ed. Universitaria, 1980, págs. 21-27. No obstante, dicho proceso de asentamiento, en instancias, ocurrió en suelos pocos idóneos por tratarse principalmente de humedales. Hernández Torrales, *supra*, pág. 796. Fue así como se desarrollaron las comunidades que conocemos como Barrio Obrero San Ciprián, Barrio Obrero Marina, Buena Vista Santurce, Parada 27, Las Monjas, Buena Vista Hato Rey e Israel-Bitumul (también conocidas como el grupo de comunidades del G8).[5] *Íd.*

Las aludidas comunidades transcurrieron -- y, en gran medida, todavía transcurren -- un camino árido para obtener el reconocimiento de sus derechos y los recursos necesarios para sus residentes.[6] Particularmente, lo relativo al

---

[5] No mencionamos la comunidad de Cantera, toda vez que -- a pesar de estar aledaña al Caño Martín Peña y ser integrante del G-8, Inc. -- no forma parte del Distrito de Planificación Especial.

[6] En ese sentido, cabe enfatizar que:

> El movimiento hacia procesos participativos dirigidos a fortalecer y rehabilitar en su sitio a las comunidades de bajos ingresos dio un paso decisivo al inicio de la última década del siglo XX. En 1990 se movilizaron esfuerzos de desarrollo comunitario y planificación participativa dirigidos a lograr la permanencia de las comunidades del sector de la Península de Cantera en Santurce y resolver sus problemas de infraestructura y condiciones inadecuadas de empleo, educación, salud y de vivienda". *Plan de Desarrollo Integral y Usos del Terreno: Distrito Especial Caño Martín Peña*, Reglamento Núm. 7469, Departamento de Transportación y Obras Públicas, *infra*, Anejo II, págs. 16-17.

Ello, en contraste a la tendencia previa de programas de eliminación de "arrabales". *Íd.*, pág. 13.

derecho a la vivienda, la salud y el bienestar ambiental de sus comunidades.[7] La férrea defensa de sus intereses ha sido observada desde los inicios de los entonces llamados "arrabales", de forma que:

> La lucha por mejorar sus condiciones de vida llevó a la formación de grupos y comités en estos arrabales que se organizaban para protestar por el mal estado de la infraestructura y [más] adelante, para luchar por la obtención de títulos de propiedad sobre los terrenos donde estaban asentadas sus viviendas. Poco a poco, y con esfuerzo, consiguieron cambios y los arrabales fueron adquiriendo servicios de acueducto, electrificación, pavimentación de calles, alcantarillado y finalmente, algunas comunidades llegaron a los títulos de propiedad. *Plan de Desarrollo Integral y Usos del Terreno: Distrito Especial Caño Martín Peña*, Reglamento Núm. 7469, Departamento de Transportación y Obras Públicas, 29 de febrero de 2008, Anejo II, pág. 10.

Como consecuencia de lo anterior, y después de un largo proceso de tramitación, -- en aras de responder a los reclamos de los y las residentes de las comunidades aledañas al Caño Martín Peña -- la Asamblea Legislativa aprobó la *Ley para el Desarrollo Integral del Distrito de Planificación Especial del Caño Martín Peña*, Ley Núm. 489-2004, según enmendada, 23 LPRA sec. 5031 *et seq.* (en adelante, "Ley Núm. 489-2004"). Ello, con el propósito de promover ciertas

---

[7] L. Algoed, M. Hernández Torrales & L. Rodríguez del Valle, *El Fideicomiso de la Tierra del Caño Martín Peña: Instrumento Notable de Regularización de Suelo en Asentamiento Informales*, https://www.lincolninst.edu/sites/default/files/pubfiles/algoed_wp18la1sp.pdf (última visita, 14 de marzo de 2022).

iniciativas para la participación, autogestión, bienestar ambiental y económico, entre otras propuestas.[8]

Así pues, el Art. 3 de la mencionada disposición legal establece como política pública del Estado Libre Asociado de Puerto Rico:

> **[D]arle <u>atención prioritaria</u> a la restauración ambiental del Caño Martín Peña y rehabilitar y revitalizar las comunidades en sus márgenes norte y sur, a los fines de fomentar una relación saludable entre el ambiente natural y la ciudad y las comunidades que le rodean, con una visión integral del desarrollo y sobre la base del apoderamiento comunitario.** (Énfasis y subrayado suplido). 23 LPRA sec. 5032.

A esos fines, la Ley Núm. 489-2004, *supra*, promueven la creación de varios recursos institucionales que logren darle vida a los loables propósitos perseguidos por la precitada pieza legal, incluyendo -- claro está -- el establecimiento de la corporación ENLACE, parte con interés en el presente litigio. En específico, la Asamblea Legislativa expresó que la referida corporación tiene -- entre otros -- el objetivo de coordinar e implantar todos los aspectos del proyecto ENLACE, incluyendo el desarrollo de vivienda, infraestructura, dragado y canalización del Caño Martín Peña; garantizar mecanismos de participación ciudadana en la planificación y ejecución del proyecto

---

[8] A manera de ejemplo, y según surge de la Exposición de Motivos del referido estatuto, el Estado Libre Asociado de Puerto Rico, junto al Cuerpo de Ingenieros del Ejército de los Estados Unidos, promueve un proceso de dragado y canalización del Caño para restituir la capacidad de flujo y reflujo de sus aguas. Véase, Exposición de Motivos de la Ley Núm. 489-2004.

ENLACE; y garantizar la continuidad de la participación ciudadana en la toma de decisiones. Véase, 23 LPRA sec. 5033.

**Para viabilizar sus trabajos, la Asamblea Legislativa dotó a ENLACE con el poder de, entre otras cosas, celebrar contratos y acuerdos de todas clases, al igual que adquirir y enajenar propiedad a cualquier título.** Véase, 23 LPRA sec. 5035 (c) y (ch). **Asimismo, se le habilitó para "gestionar y obtener de las agencias públicas la ayuda técnica y económica que estime necesaria, de cualquier naturaleza, para cumplir [sus funciones]".** (Énfasis suplido). 23 LPRA sec. 5035 (i). Queda claro, pues, que la corporación ENLACE fue facultada con amplios poderes para viabilizar su propósito: el dragado y canalización del Caño Martín Peña.

IV.

Dicho ello, y para la correcta disposición de las controversias ante nuestra consideración, es menester señalar también que la AFI -- una corporación pública e instrumentalidad, que constituye un cuerpo corporativo y político independiente -- fue creada para proporcionar una alternativa para el financiamiento de la infraestructura de nuestro País, incluyendo la construcción, rehabilitación, adquisición y preservación de ésta. Véase, 3 LPRA sec. 1901. **Para lograr lo anterior, la AFI está investida con la habilidad de "conceder asistencia a cualquier corporación pública, instrumentalidad gubernamental, subdivisión política o municipio autorizado por ley a proveer**

**facilidades de infraestructura"**. (Énfasis suplido). 3 LPRA sec. 1904. Así, por ejemplo, se dispone que la AFI puede adquirir propiedad mueble e inmueble de cualquier manera legal, inclusive por medio del mecanismo de expropiación forzosa. Véase, 3 LPRA sec. 1906.

**En esa línea, y con el fin de alcanzar los objetivos dispuestos en ley, la AFI está autorizada a otorgar contratos con cualquier corporación pública o instrumentalidad gubernamental que necesite asistencia**. Véase, 3 LPRA sec. 1905. En este caso, como lo sería el proyecto ENLACE.

Es, pues, a la luz de la normativa y realidad histórica antes expuesta que procedemos a disponer, desde la disidencia en cuanto a este particular, los méritos de la controversia sustantiva y medular que estaba ante nuestra consideración.

V.

Como mencionamos anteriormente, estamos conforme con el proceder de este Tribunal en cuanto a la determinación que arriba sobre el asunto jurisdiccional planteado. Empero, disentimos en parte toda vez que dicha determinación guarda un peligroso silencio al desatender la controversia sustantiva sobre si los foros *a quo* incidieron al no adjudicar los bienes expropiados forzosamente a favor de ENLACE. Esto último cobra mayor relevancia -- y nos aparta, en cierta forma, de anteriores pronunciamientos --, pues como advertimos, estamos ante uno de esos escenarios donde

continuar aplazando un asunto de tan alto interés público no podía ser una opción.

En lo relacionado a este particular, la AFI -- en representación de ENLACE -- sostiene que el foro apelativo intermedio erró al no adjudicar en los méritos la controversia sustantiva ante su consideración. Es decir, si procedía o no la entrega directa de los bienes expropiados forzosamente a favor de ENLACE, así como la correspondiente inscripción. A nuestro juicio, le asiste la razón.

Y es que, según esbozamos previamente, la AFI tiene la facultad para otorgar contratos con entidades que necesitan su asistencia, de modo que pueda obtener remedios a su favor. Así lo hizo la mencionada dependencia gubernamental en el presente caso, al otorgar el correspondiente contrato con la corporación ENLACE para asistirla durante el proceso judicial de expropiación forzosa de los bienes inmuebles que dieron origen a las controversias de epígrafe. **Del referido proceso judicial que se celebró, la AFI obtuvo un remedio. Ahora bien, dicho remedio fue obtenido al comparecer ante el foro primario <u>en representación</u> y en <u>beneficio</u> de ENLACE, quien era la parte que interesaba tener el uso y pleno dominio sobre los bienes inmuebles.**

En consecuencia, -- tal como correctamente han determinado varios Paneles del Tribunal de Apelaciones -- en los casos de autos procede la entrega e inscripción de las propiedades expropiadas forzosamente a favor de ENLACE,

mas no así de la AFI. En ese sentido, al rechazar los recursos presentados por dicha entidad gubernamental y desatender la controversia sustantiva en cuestión, el foro apelativo intermedio erró.

A todas luces, procedía aquí la entrega e inscripción de la propiedad expropiada forzosamente a favor de ENLACE. Se cometieron, pues, en nuestra opinión, los errores señalados.

## VI.

**En fin, y a modo de epílogo, somos de la opinión que, más allá de atender la controversia jurisdiccional presentada ante nos, esta Curia debió acatar su deber -- sí, ese que emana del sentido de la justicia -- de resolver en los méritos la controversia sustantiva que postergó el Tribunal de Apelaciones con su proceder. No podíamos, pues, a través del silencio jurídico que hoy asumen una mayoría de mis compañeros y compañera de estrado -- so pretexto de estricto derecho --, en escenarios tan particulares como este, ponerle cortapisas al desarrollo de un proyecto comunitario y participativo tan indispensable como lo es el encomendado a la corporación ENLACE.**

**En definitiva, ya ha pasado demasiado tiempo como para no darle certeza a este asunto de una vez y por todas. Lo contrario, sin duda, redunda en una pérdida de tiempo y un patente fracaso de la justicia.**

Así pues, a través de esta *Opinión de Conformidad en parte y Disidente en parte*, validamos el imperativo de autogestión y desarrollo -- dispuesto en ley -- de las comunidades aledañas al Caño Martín Peña, quienes son "forjador[as] de una realidad distinta, llena de nuevas posibilidades tanto para [ellas] como para el resto de las comunidades en Puerto Rico". Hernández Torrales, *supra*, pág. 797. Un ejemplo, a todas luces, digno de emular.

VII.

Por los fundamentos antes expuestos, estamos conforme en parte y disentimos en parte con el dictamen que emite este Tribunal en el día de hoy.


Ángel Colón Pérez
Juez Asociado