ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| ZAILIZ PAOLA AMADOR RIVERA RECURRIDA v. AEROTEK como compañía de empleo temporero y co-patrono de la Querellante y BRISTOL MYERS SQUIBB PETICIONARIOS | KLCE202400212 cons. KLCE202400213 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo Caso Número: AR2020CV00437 Sobre: Discrimen por Madre Obrera, Procedimiento Sumario |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Ortiz Flores, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 18 de marzo de 2024.

Bristol Myers Squibb y Aerotek, Inc. comparecen ante este Tribunal de Apelaciones mediante los recursos de *certiorari* de autos en los que impugnan la *Resolución* dictada por el Tribunal de Primera Instancia, Sala Superior de Arecibo. Los peticionarios aducen que el foro de instancia erró al no dictar sentencia sumaria, cuando no existían controversias de hecho que impidieran el dictamen.

Por los fundamentos a continuación, denegamos la expedición de los recursos de *certiorari*.

**I**

El 6 de marzo de 2020, Zailiz Paola Amador Rivera (en adelante, recurrida) presentó una querella sobre discrimen contra los peticionarios. En esencia sostuvo que fue despedida discriminatoriamente de su empelo temporero, a consecuencia de su estado de gestación. Precisó que informó a su supervisora, Nilka Egipciaco, al respecto. Además, adujo que se le informó que el despido se debió a desviaciones a los procesos, sin embargo, esta alegó que no realizó dichas gestiones. Finalmente, arguyó que tan pronto advino en conocimiento de dicha situación informó al personal de los peticionarios, quienes le indicaron que continuarían a pesar

de ello. A pesar de estas circunstancias, señaló que los peticionarios mantuvieron trabajando a todos los demás empleados y a quien únicamente despidieron fue a ella. Por consiguiente, solicitó la reinstalación a su empleo, los sueldos dejados de percibir, daños y perjuicios no menores a $150,000.00, y una suma de igual cantidad como penalidad.

Bristol Myers contestó que no era el patrono de la recurrida, sino que era Aerotek. Añadió que esta ocupaba un empleo temporero por lo que su salida se debió a la culminación de su empleo de acuerdo con los términos del contrato, así como a su incumplimiento y desvío de las normas de la empresa. En esencia, sostuvo que el despido no obedeció razones discriminatorias. Por su parte, Aerotek negó la alegación de discrimen y sostuvo que desconocía el estado de embarazo de esta.

Así las cosas, los peticionarios presentaron mociones de sentencia sumaria en la que sostuvieron, nuevamente, que desconocían el estado de embarazo de la recurrida. Añadieron que dieron por terminada la asignación de esta tras una investigación sobre sus faltas a los estándares de la empresa. La recurrida se opuso a la solicitud de sentencia sumaria y expuso que permanecían hechos en controversia que requerían la celebración de un juicio para dirimir elementos de credibilidad.

Sometidas las mociones ante el Tribunal de Primera Instancia, así como réplicas de los peticionarios, el foro recurrido dictó *Resolución* en la que declaró no ha lugar las mociones de sentencia sumaria. El foro primario determinó que no estaban en controversia treinta y tres (33) determinaciones de hechos propuestas por los peticionarios. Sin embargo, sostuvo que permanecían en controversia los siguientes hechos propuestos por el peticionario Bristol:

1. La querellante no logró comunicarse con otra persona antes de que se continuara el proceso de *media fill. Véase, "Moción de sentencia sumaria" [48], VI. Hechos Materiales que no están en controversia, Hecho #19.*
2. La querellante no paralizó el proceso de *media fill* nuevamente, además de las intervenciones normales y el evento atípico de la rotura del equipo. *Id, Hecho #21.*
3. A raíz de la investigación y de su desenlace, los altos gerenciales Bristol tomaron la decisión de terminación la

asignación de la querellante por su violación a los procesos y repercusiones. *Id, Hecho #30.*

4. Incluso, la querellante no tiene conocimiento alguno de que las personas que evaluaron y tomaron la decisión de terminar su asignación temporera, ni de si éstas supieran sobre su embarazo. *Id, Hecho #32.*

5. Las que tomaron la decisión de terminar la asignación temporera de la querellante fueron Carmen Amador, Directora de Control de Calidad de Bristol en el tiempo de los hechos del caso del epígrafe y Jorge López, anterior General Manager de Bristol. *Id, Hecho #33.*

6. Frances Albors, Senior Client Services Manager – Contingent Workforce de Bristol, le comunica a Aerotek que debido a un evento ocurrido en el cual la querellante estaba involucrada, se estaba dando por terminada la asignación temporera de Amador. *Id, Hecho #34.*

7. La querellante tiene conocimiento de que la terminación de su asignación temporera con Bristol se debe a la violación a los procedimientos y las repercusiones de dichas violaciones ocurridas durante el evento de *media fill* del 18 de diciembre de 2018. *Id, Hecho #37.*

De igual forma, el tribunal recurrido determinó que se encontraban en controversia los siguientes hechos propuestos por el peticionario Aerotek:

1. En dicho proceso de *media fill*, se dio la contaminación en un vial, por lo que no se cumplió con tener un proceso completamente limpio. *Véase, "Moción de sentencia sumaria de reclamación en contra de Aerotek" [49], V. Hechos materiales que no están en controversia, Hecho #15.*

2. A raíz de la investigación y de su desenlace, los altos gerenciales de Bristol tomaron la decisión de dar por terminada la asignación de la querellante. *Id, Hecho #18.*

3. El 13 de marzo de 2019, Vázquez recibió una comunicación de Frances Albors, *Senior Clinet Services Manager – Contingent Workforce* de Bristol, para informar que debido a un evento ocurrido en el cual la querellante estaba involucrada, se estaba dando por terminada la asignación temporera de Amador, con fecha efectiva el 15 de marzo de 2019. *Id, Hecho #19.*

4. El 15 de marzo de 2019, Vázquez se comunicó mediante llamada telefónica con la querellante para notificarle de la terminación de su asignación temporera en Bristol. *Id, Hecho #20.*

5. Durante la llamada del 15 de marzo de 2019, luego de notificarle la terminación de su asignación temporera, Amador le notificó por primera vez a Aerotek, a través de Vázquez, que se encontraba embarazada. *Id, Hecho #21.*

6. Vázquez citó a Amador a una reunión presencial el 18 de marzo de 2019 para dialogar sobre la terminación de la asignación temporera en Bristol. *Id, Hecho #22.*

7. El 18 de marzo de 2019, la querellante y Vázquez se reunieron personalmente, y Vázquez le explicó en más detalle la razón que Bristol había dado para dar por terminada la asignación temporera de Amador. *Id, Hecho #23.*

8. Durante dicha reunión, Vázquez le explicó a la querellante que su terminación se debió a que, a raíz de una investigación realizada por Bristol, se concluyó que la querellante incurrió

en una serie de desviaciones a los procedimientos ocurridos durante el proceso de *media fill. Id, Hecho #24.*

9. Durante dicha comunicación, la querellante le indicó a Vázquez que no había notificado de su embarazo a Aerotek dado a que anteriormente había tenido una pérdida de otro embarazo, y, por tanto, en este nuevo embarazo estaba esperando más tiempo para notificar. *Id*, *Hecho #26.*

10. La querellante nunca fue despedida de Aerotek. *Id, Hecho #27.*

11. Aerotek le informó a la querellante que debía continuar comunicándose con Aerotek para futuras oportunidades de empleo. *Id, Hecho #28.*

12. Incluso, Aerotek procesó la terminación de la asignación temporera de la querellante como un End of Assignment, con el fin de que pudiese seguir recibiendo ofertas de empleo temporero. *Id, Hecho #29.*

13. La querellante continuó en comunicación con Aerotek después de la terminación de la asignación temporera con Bristol con miras a considerar más oportunidades de trabajo. *Id, Hecho #30.*

14. Según acordado, en o alrededor del 22 de abril de 2020 y 19 de mayo de 2020, Aerotek intentó comunicarse con la querellante para discutir posibles oportunidades de empleo, pero no logró conseguirla mediante llamada telefónica. *Id, Hecho #31.*

15. El 27 de mayo de 2020, Aerotek tuvo una llamada con la querellante para actualizar su resume y perfil a fin de que el mismo estuviese actualizado para ofrecerle cualquier oportunidad de empleo disponible. *Id, Hecho #32.*

Inconformes con dicha determinación, los peticionarios acudieron ante este Tribunal de Apelaciones. Ambos, precisaron que el Tribunal de Primera Instancia:

Erró el TPI al denegar la moción de sentencia sumaria de BMS y no desestimar el pleito con perjuicio.

Concedimos término hasta el 1 de marzo de 2024 para que la recurrida presentara su posición respecto a la expedición de los recursos, consolidados. El 14 de marzo de 2024, luego de una moción de prórroga, se presentó el *Alegato en oposición a petición de certiorari*. Resolvemos con el beneficio de los escritos de las partes.

**II**

**A.**

El auto de *certiorari* es el vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723 (2016). En esencia consiste en un recurso extraordinario caracterizado por que descansa en la discreción del tribunal para su expedición, la cual no es

irrestricta. *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012). El tribunal tiene discreción para atender el asunto planteado, bien sea para expedir o denegar el auto. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011). En estos casos procede un análisis dual para determinar si se expide o no un recurso de *certiorari*, el cual consta de una parte objetiva y otra subjetiva.

Primero, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LRPA Ap. V, R. 52.1, establece que el recurso de *certiorari* para revisar resoluciones interlocutorias del Tribunal de Primera Instancia será expedido, entre otros, cuando se recurra de la denegatoria de una moción de carácter dispositivo u alguna orden bajo las Reglas 56 y 57. A esos efectos, el primer examen para que un recurso de *certiorari* sea expedido es que tenga cabida bajo uno de los escenarios contemplados en la Regla 52.1, *supra*.

Superada esta primera etapa, procede examinar si se justifica nuestra intervención a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones. 4 LPRA Ap. XXII-B, R. 40. Recuérdese que es un recurso que depende de la discreción del tribunal revisor. Conforme a esta Regla, los criterios que justifican nuestra intervención son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, la discreción judicial no opera en el vacío. En etapa de revisión judicial es norma reiterada que el Tribunal de Apelaciones no habrá de intervenir con el ejercicio de discreción del Tribunal de Primera

Instancia, "salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad". *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012) (citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido, por tanto, debemos ejercer nuestra discreción para evaluar si, a la luz de estos criterios, se requiere nuestra intervención. Si no fuera así, procede que nos abstengamos de expedir el auto, de manera que se continúen los procedimientos del caso sin mayor dilación en el foro de primera instancia.

**B.**

En nuestro ordenamiento jurídico, la sentencia sumaria responde al propósito de aligerar la conclusión de los pleitos eliminando el juicio en su fondo, pero siempre y cuando no exista una legítima disputa de hecho a ser dirimida, de modo que lo restante sea aplicar el derecho solamente". *Jusino et als. v. Walgreens*, 155 DPR 560, 576 (2001). Véase, además, *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018). Conforme a la Regla 36 de Procedimiento Civil, *supra*, para adjudicar una moción de sentencia sumaria se requiere la presentación de "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" bien sea sobre la totalidad de la reclamación o parte de esta. En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

En armonía con lo anterior, la sentencia sumaria solo debe dictarse en casos claros. Si no existe certeza sobre todos los hechos materiales en la controversia, no procede que se dicte sentencia sumaria. Sin embargo,

se ha establecido que la sentencia sumaria, "[p]rocede, aunque se hayan alegado hechos que aparenten estar en controversia, pero cuando el promovente logre demostrar preponderantemente, y mediante dicha prueba documental, que en el fondo no existe controversia sobre los hechos medulares." *Jusino et als. v. Walgreens*, *supra*, a la pág. 577. Ante esta situación, la parte promovida debe "defenderse de la misma forma, es decir, apoyándose a su vez de documentos u otra evidencia admisible." *Id.*

En fin, toda vez que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley." *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia." *Meléndez González v. M. Cuebas*, *supra*, a las págs. 109-110. De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al*, 132 DPR 115,133 (1992).

Según se ha reiterado jurisprudencialmente, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) considerar solamente los documentos que se presentaron ante el foro de primera instancia; y (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Esto es, estamos impedidos de adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos materiales y esenciales es una tarea

que le compete al Tribunal de Primera Instancia y no al foro intermedio. Por consiguiente, el Tribunal Supremo en *Meléndez González et al. v. M. Cuebas*, *supra*, estableció el estándar que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria.

En lo pertinente, se dispuso que "[l]a revisión del Tribunal de Apelaciones es *de novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario". *Id.* en la pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.*

**III**

Conforme a la Regla 52.1 de Procedimiento Civil, *supra*, nos encontramos ante uno de los escenarios contemplados por dicha disposición para presentar recursos de *certiorari* ante este Tribunal de manera interlocutoria. No obstante, el ejercicio de discreción que nos compete realizar no culmina con la aplicación de esta regla. Entiéndase, no basta con que se trata de la denegatoria de una moción de carácter dispositivo como la moción de sentencia sumaria del caso de autos.

Nos corresponde analizar si procede la expedición del recurso de *certiorari* a la luz de los criterios dispuestos por la Regla 40 del Reglamento del Tribunal de Apelaciones. Tras un análisis cuidadoso de los expedientes, así como las determinaciones de hechos realizadas por el foro recurrido, resolvemos que no se justifica nuestra intervención en esta etapa del procedimiento judicial. Habiendo considerado *de novo* el listado de hechos controvertidos incluidos en el dictamen del Tribunal de Primera Instancia, nos resulta evidente que su juicio sobre la existencia de hechos en controversia tiene base adecuada y racional. Este hecho impide la disposición sumaria y amerita la continuación del proceso judicial para dirimir asuntos de apreciación.

Cónsono con lo anterior, no encontramos que el tribunal primario haya incurrido en abuso de discreción o que haya actuado bajo prejuicio o parcialidad que acarree un fracaso de justicia. Tampoco se demostró que el foro recurrido se haya equivocado en la interpretación o aplicación de una norma procesal ni que intervenir en esta etapa evitaría un perjuicio sustancial contra los peticionarios, razón por la cual denegamos la expedición del *certiorari*.

**IV**

Por los fundamentos anteriores, a la luz de los criterios que guían nuestra discreción, declaramos no ha lugar la expedición de los recursos de *certiorari*.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones